Karen E. Wentzel (SBN 112179)
DORSEY & WHITNEY LLP
1717 Embarcadero Road
Palo Alto, California 94303
(650) 857-1717 : phone
(650) 857-1288 : fax
Email:  efilingPA@dorsey.com

Edward B. Magarian (admitted *pro hac vice*)
Zeb-Michael Curtin (admitted *pro hac vice*)
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402
(612) 340-2600 : phone
(612) 340-2777 : fax
Email: magarian.edward@dorsey.com
        curtin.zeb@dorsey.com

Attorneys for Defendant
AMERIPRISE FINANCIAL
SERVICES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SYLVIA JOHNSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AMERIPRISE FINANCIAL SERVICES, INC.,<br><br>Defendants. | Case No.  C 07-03168 PJH<br><br><br>**DEFENDANT'S MOTION FOR ORDER REGARDING DISCOVERY PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23(d) and 26(c)**<br><br><br>**Date:  Wednesday, March 5, 2008**<br>**Time: 9:00 a.m.** |

PLEASE TAKE NOTICE that on Wednesday, March 5, 2008,[1] at the San Francisco

federal courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendant Ameriprise

---

[1]  The parties have filed a Stipulated Request for Order Shortening Time asking the Court to set the instant Motion for hearing on February 27, 2008, at the same time as Defendant's pending Motion for Leave to File Amended Answer and Counterclaim.

1  Financial Services, Inc. ("Ameriprise Financial" or "Defendant") will move pursuant to Federal

2  Rules of Civil Procedure 23(d) and 26(c) for an order regarding the conduct of this putative class

3  action lawsuit.

4  Plaintiff's counsel recently distributed a solicitation letter regarding this lawsuit

5  (captioned "newsletter," and hereinafter referred to as such) to an undisclosed number of putative

6  class members (P2 Independent Advisors / franchisees) and an undisclosed number of

7  Defendant's P1 Employee Advisors who are not putative class members.  In that "newsletter,"

8  Plaintiff's counsel misleadingly promised that any communications from any recipients of that

9  "newsletter" will be kept confidential.  They also improperly seek to obtain information (without

10  excluding documents) from Company employees who are not putative class members, without

11  regard for the formal discovery process.  The information requested is broad enough to include

12  Ameriprise Financial confidential and proprietary business information and/or documents, thus

13  depriving Defendant of its right to conduct privilege and confidentiality review of its own

14  documents, or to ensure there are adequate safeguards protecting against the disclosure of

15  company or client confidential information, which is protected by federal and state law.

16  Ameriprise Financial is in the financial services industry, and subject to a multitude of state and

17  federal laws that prohibit the transfer of client information to anyone outside of the Company.

18  Moreover, Ameriprise Financial itself has numerous categories of documents and information

19  that are confidential and proprietary, as described in Plaintiff's Franchise Agreement.  See

20  Section 10 of 10/23/99 Franchise Agreement (attached as Exhibit 1 to the Declaration of Edward

21  B. Magarian filed herewith ("Magarian Declaration")).

22  Subsequently, Plaintiff's counsel has categorically refused to identify the recipients of

23  their "newsletter" and/or the individuals who have communicated with them in response to the

24  "newsletter," even though such information is not privileged.  For the reasons articulated below,

25  Defendant respectfully asks the Court to grant its Motion and require: (1) that Plaintiff's counsel

26  provide written curative notice to any P1 Employee Advisors who received their "newsletter,"

27  informing them that their conversations with Plaintiff's counsel are not confidential, and that said

28  employees should not provide to Plaintiff or her counsel company documents; (2) that Plaintiff's

**MOTION FOR ORDER REGARDING DISCOVERY**
**CASE NO. C 07-3168**

-2-

1  counsel expressly tell any P1 Employee Advisor who contacts them that their conversations with

2  Plaintiff's counsel are not confidential and that said employees should not provide to Plaintiff or

3  her counsel company documents; (3) that Plaintiff's counsel not seek to obtain and/or obtain

4  Ameriprise Financial documents from any P1 Employee Advisors; (4) that Plaintiff's counsel

5  produce a list of all individuals to whom they have distributed their "newsletter" by any means

6  and a list of all individuals who have contacted them in response to their "newsletter"; (5) that

7  Plaintiff's counsel produce all originals and copies of  documents they have received to date (or

8  receive hereafter) from any P1 Employee Advisors, and that Defendant be given the opportunity

9  to review said documents for attorney-client privilege; and (6) that all documents obtained by

10  Plaintiff's counsel from Ameriprise Financial employees be designated as confidential pursuant to

11  the protective order.

12

13                                    **FACTUAL BACKGROUND**

14        On or around January 8, 2008, Plaintiff's counsel mailed to an undisclosed number of

15  putative class members (P2 Independent Advisors) and non-putative class members (P1

16  Employee Advisors) a "newsletter" (hereinafter "Newsletter") vaguely describing this lawsuit and

17  soliciting information from those recipients.  In it, Plaintiff's counsel suggested, contrary to law,

18  that any communications between recipients of the Newsletter and Plaintiff's counsel would be

19  kept confidential.  The Newsletter contains two provisions relevant to Plaintiff counsel's

20  solicitation of information from the employees which impact the veracity of any such

21  confidentiality claim.

22        First, although the Newsletter acknowledged that only P2 Independent Advisors are

23  members of the putative class, Plaintiff's counsel directed a portion of the Newsletter to

24  Ameriprise Financial employees (who they do not represent, or seek to represent in this action),

25  suggesting these employees "may have important information that could affect [Plaintiff's

26  counsel's] ability to protect the rights of the P-2 Independent Advisors."  See "Newsletter" from

27  Carrie S. Lin to Unknown Recipients (dated January 8, 2008) (Magarian Decl. Ex. 2).   In

28

1  essence, Plaintiff contacted Ameriprise Financial employees to gather evidence in their capacity

2  as a witness.

3      Second, in that context, the Newsletter informed the Ameriprise Financial employees that

4  "[w]e also urge you to contact us today to discuss this case and the role you may play in it.  Our

5  job is to keep you informed and make sure you understand your rights.  In staying abreast of these

6  developments, you should also know that **you have the right to communicate with our office**

7  **on a confidential basis**."  See id. (emphasis in original).

8      Shortly after learning of this Newsletter through a P2 Independent Advisor who received

9  the communication and believed its allegations to be meritless, Defendant's counsel wrote

10  Plaintiff's counsel, asking them to immediately identify all recipients of the Newsletter and all

11  persons who contacted them in response.  Defendant further objected to Plaintiff's counsel's false

12  promise of confidentiality and apparent attempt to solicit Ameriprise Financial documents from

13  P1 Employee Advisors who were not even putative class members.  See Letter from Edward B.

14  Magarian to Carrie S. Lin (January 22, 2008) (Magarian Decl. Ex. 3).  Defendant also served

15  discovery requests regarding the recipients of the Newsletter and subsequent communications

16  between Plaintiff's counsel and those recipients.  See Defendant's Interrogatories to Plaintiff (Set

17  II) and Defendant's Requests for Production of Documents to Plaintiff (Set II) (attached to

18  Magarian Decl. Ex. 3).

19      On January 24, having received no response to his letter, Defendant's counsel wrote

20  Plaintiff's counsel to reiterate that it was "imperative [to] address this issue immediately."  See E-

21  Mail from Edward Magarian to Carrie S. Lin (January 24, 2008) (Magarian Decl. Ex. 4).

22  Plaintiff's counsel responded later that day, refusing to provide any information regarding the

23  Newsletter and otherwise refusing to comply with Defendant's requests.  See E-Mail from Carrie

24  S. Lin to Edward Magarian (January 24, 2008) (Magarian Decl. Ex. 5).  Shortly thereafter,

25  Defendant's counsel wrote back to provide further detail regarding Defendant's concerns.  See E-

26  Mail from Edward Magarian to Carrie S. Lin (January 24, 2008) (Magarian Decl. Ex. 6).  The

27  next day, Plaintiff's counsel again cursorily rejected Defendant's concerns but invited verbal

28

1   discussion.  <u>See</u> E-Mail from Carrie S. Lin to Edward Magarian (January 25, 2008) (Magarian

2   Decl. Ex. 7).

3        On January 28, the parties' counsel met-and-conferred via telephone in an attempt to

4   resolve Defendant's concerns.  <u>See</u> Magarian Decl. at ¶ 2.  Plaintiff's counsel continued to refuse

5   to provide any information regarding the recipients of the Newsletter and/or persons who may

6   have contacted them in response.  She even refused to confirm or deny whether Plaintiff's

7   counsel had collected any Company documents from P2 or P1 Advisors.  <u>Id.</u>  The instant Motion

8   followed.

9                              **ARGUMENT**

10       Rule 23(d) of the Federal Rules of Civil Procedure provides the Court with "broad powers

11  to make 'appropriate orders' to ensure efficient and fair proceedings in a class action."  <u>In re</u>

12  <u>McKesson HBOC, Inc. Sec. Litig.</u>, 126 F. Supp. 2d 1239, 1242 (N.D. Cal. 2000).  Under this

13  rule, a court has the option of a variety of actions, including restricting communications with class

14  members.  <u>See id.</u>  Because there is a potential for abuse in class action litigation with respect to

15  class communications, <u>see e.g.</u>, <u>id.</u> at 1244, courts have the power to remedy misleading

16  communications by counsel.  This may include requiring a party to issue "curative notices,"

17  clarifying prior misrepresentations, and to require certain disclosures with respect to future

18  communications.  <u>See id.</u> at 1246.[2]

19       The Court should grant Defendant's requested relief on this motion because Plaintiff's

20  Newsletter misrepresents that any communications between P1 Employee Advisors and

21  Plaintiff's counsel will be kept "confidential".[3]  As discussed below, Plaintiff's misrepresentation

22  unfairly prejudices Defendant, unnecessarily confuses both putative class members and

23

24       [2] Additionally, and providing the Court with further basis for entry of an order in this litigation, a
    court can issue a protective order under Fed. R. Civ. P. 26(c), upon motion by a party and "for good cause
25  shown."  Protective orders may be issued where "justice requires to protect a party from annoyance,
    embarrassment, oppression, undue burden or expense."  A protective order may disallow discovery, set
26  terms and conditions for discovery, or limit the scope of discovery.  <u>See id.</u>

27       [3] Defendant reserves its right to any additional claims it has for other defamatory or false and
    misleading information in Plaintiff's Newsletter even though any such claims are not addressed in the
28  instant motion.

1    Ameriprise Financial employees who are not putative class members, but potential witnesses to

2    this case, seeks to contravene the discovery rules, and thus warrants either the entry of an order

3    with respect to class communications under Rule 23(d) and/or a protective order under Rule

4    26(c).

5    **I.    Plaintiff's Misrepresentation of the Existence of an Attorney Client Relationship to**
     **P1 Employee Advisors Is Improper and Warrants Issuance of a Curative Notice.**

6

7        Plaintiff's Newsletter misrepresents to P1 Employee Advisors that their communications

8    can be held "confidential," presumably under the attorney-client privilege.  Plaintiff's counsel

9    cannot purport to categorically extend a promise of confidentiality to P1s because there is no

10   basis for asserting an attorney-client relationship, let alone any accompanying privilege, with

11   respect to any such communications.  Ameriprise Financial employees are, at most, witnesses, but

12   they are not clients of Plaintiffs.  Plaintiff's counsel's letter concedes as much.  Furthermore, the

13   party resisting discovery on the grounds of privilege or the work-product doctrine bears the

14   burden of proving that the asserted privilege or protection actually attaches.  See, e.g., Davis v.

15   Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981).  Evidentiary privileges should be narrowly

16   construed because they prevent the admission of relevant and otherwise admissible evidence.

17   McKesson HBOC, Inc. v. Superior Crt., 115 Cal. App. 4th 1229, 1236 (1st Dist. 2004).

18       Under California law, the attorney-client privilege attaches to confidential

19   communications between a client and his attorney during the course of the attorney-client

20   relationship.  The California Evidence Code defines "client" as "a person who, directly or through

21   an authorized representative, consults a lawyer **for the purpose of retaining the lawyer or**

22   **securing legal service or advice from him in his professional capacity**."  Cal. Evid. Code §

23   951 (emphasis added).  Furthermore, California generally defines a "confidential communication

24   between client and lawyer" as

25

26           information transmitted between a client and his or her lawyer in the
             course of that relationship and in confidence by a means which, so far as
             the client is aware, discloses the information to no third persons other than
27           those who are present to further the interest of the client in the
             consultation or those to whom disclosure is reasonably necessary for the
28

---

transmission of the information or the accomplishment of the purpose for
which the lawyer is consulted, and includes a legal opinion formed and the
advice given by the lawyer in the course of that relationship.

Id. at § 952.  Although the communication may serve other purposes in addition to promoting the

purpose of the consultation, the primary purpose of the communication must be to promote the

client's interests in consulting the attorney.  See Calvert v. State Bar, 819 P.2d 424, 431 (Cal.

1991); see also Hager v. Shindler, 29 Cal. 47, 64 (Cal. 1865) ("It is settled that if a client, pending

the relation, communicates to his attorney a fact foreign to the object for which the attorney was

retained, the communication is not to be regarded as confidential. The scope of the confidence is

as the scope of the purpose. Each is considered to be the exact measure of the other.").

Furthermore, even if the party asserting privilege is able to establish a valid attorney-client

relationship, not all information that passes between an attorney and client is entitled to remain

confidential.  Aerojet-Gen'l Corp. v. Transport Indem. Ins., 18 Cal. App. 4th 996, 1004 (Cal.

App. 1993).  The most obvious example is information that is required to be disclosed in response

to discovery.  Id.  "A document which is not merely a communication to an attorney but which

has independent significance does not become privileged by transmission to an attorney.  If the

document has such independent existence as to be subject to compulsory disclosure while in the

client's possession, it remains subject to disclosure despite its physical delivery to the attorney."

People v. Briggs, 19 Cal. Rptr. 772, 780 (Cal. Ct. App. 1962), superseded, 374 P.2d 257 (Cal.

1962).

P1 Employee Advisors are not (and cannot be) parties to the instant litigation because they

are not included in the putative class.  Therefore, a P1 Employee Advisor contacting Plaintiff's

counsel to provide facts or documents regarding this P2 Independent Advisor case is not

contacting Plaintiff's counsel for the purpose of obtaining legal advice with respect to this

litigation, and thus is not a client.  Any communication that a P1 Employee Advisor might make

to Plaintiff's counsel with respect to this litigation cannot "promote [the P1 Employee Advisor's]

interests in consulting [Plaintiff's counsel]" because P1 Employee Advisors do not have a stake in

1    this litigation.  As a result, such communications are not protected by the attorney-client

2    privilege.

3        Plaintiff's attempt to stamp all communications with P1 Employee Advisors and

4    documents received therefrom as per se "confidential" and within the scope of attorney-client

5    privilege is also not effective because the information and/or documents Plaintiff would elicit

6    from the P1 Employee Advisors concerning this litigation would be information and/or

7    documents that have independent significance.  Simple transmission of that information to

8    Plaintiff's counsel does not make that information and/or documents "privileged."  Plaintiff's

9    counsel is, in essence, engaging in broad-based fact gathering from non-client P1 Employee

10   Advisors with respect to litigation that does not concern the P1 Employee Advisors, and

11   purporting to withhold such information and/or documents from proper disclosure to Defendant

12   under the discovery rules on the basis of privilege.  Plaintiff has no basis for making such

13   representations of "confidentiality" to P1 Employee Advisors.

14       The misrepresentation in the Newsletter stands to prejudice Ameriprise Financial in this

15   litigation, and also presents a confusing message to those individuals that receive it.  Ameriprise

16   Financial employees should not be given false promises of confidentiality.  Such false promises

17   are not fair to those employees or Ameriprise Financial, and are certainly not appropriate in this

18   or any litigation.  Accordingly, the Court should order that Plaintiff's counsel send a "curative

19   notice" to recipients of its Newsletter acknowledging that counsel's promise of confidentiality

20   was false, that counsel does not represent P1 Employee Advisors in this litigation and any

21   conversation with the Plaintiff's counsel about this lawsuit is not confidential.  In addition, as

22   further discussed below, the curative notice should also make P1 Employee Advisors aware that

23   they may not provide any Ameriprise Financial documents to Plaintiff's counsel, and any such

24   request for documents must be made through Company counsel.  Ameriprise Financial further

25   requests that Plaintiff's counsel be required to notify any P1 Employee Advisors of the same if

26   and when they contact Plaintiff or counsel.

27

28

**MOTION FOR ORDER REGARDING DISCOVERY**
**CASE NO. C 07-3168**

-8-

1

**II. Plaintiff's Misrepresentation Interferes With Ameriprise Financial's Right to Discover the Identities of the Contacting Advisors.**

2    Not only are the communications between Plaintiff's counsel and P1 Employee Advisors

3  not protected, but it should have been apparent to Plaintiff's counsel that they were overstating

4  the scope of the privilege with respect to P1 Employee Advisors.  The misrepresentation in the

5  Newsletter is a blatant attempt to interfere with Ameriprise Financial's own discovery rights in

6  this litigation.  Because a P1 Employee Advisor cannot be a party to this litigation, nor a client of

7  Plaintiff's counsel with respect to this litigation, Ameriprise Financial has as much a right to

8  interview those individuals as potential witnesses as Plaintiff.  See Aerojet-Gen'l Corp., 18 Cal.

9  App. 4th at 1004 (stating that the attorney client privilege does not extend to independent

10  witnesses or their discovery and that "the identity and location of persons having knowledge of

11  relevant facts" cannot be concealed).  Plaintiff's misrepresentation of the possible application of

12  the attorney-client privilege to P1 Employee Advisors to whom they have reached out is an

13  underhanded attempt to discover potential witnesses to whom they will then unfairly deny

14  Ameriprise Financial access.

15    Ameriprise Financial has made its concerns in this regard clear to Plaintiff's counsel, and

16  counsel has continued to maintain that the identities of any individuals who contact them are

17  privileged.  Plaintiff's position is simply incorrect with respect to both P1 and P2 Advisors.

18  Consistent with federal practice, California law generally does not extend the attorney-client-

19  privilege protection to facts such as the identities of the attorney and client.  See Hays v. Wood,

20  603 P.2d 19, 25 (Cal. 1979) aff'd in part, 78 Cal. App.3d 354 (1st Dist. 1978) ("It is well-

21  established that the attorney-client privilege, designed to protect communications between them,

22  does not ordinarily protect the client's identity."); Brunner v. Superior Court, 335 P.2d 484, 486

23  (Cal. 1959) ("[I]t is the general rule that an attorney is not privileged to withhold disclosing by

24  whom he has been employed.").  As a result, while it has already been established that there is no

25  attorney-client relationship between Plaintiff's counsel and P1 Employee Advisors, even if there

26  were an attorney-client relationship established between Plaintiff's counsel and any P2

27  Independent Advisors who contact them, the identities of those individuals likewise cannot be

28

**MOTION FOR ORDER REGARDING DISCOVERY**
**CASE NO. C 07-3168**
-9-

1    shrouded under the auspices of privilege.  Accordingly, the Court should order that Plaintiff's

2    counsel disclose to Defendant the identities of any and all P1 and P2 Advisors who have

3    contacted them or will contact them in the future.

4    **III.   Plaintiff's Misrepresentation Encourages Impermissible Self-Help Discovery.**

5         Also gravely concerning to Ameriprise Financial is the possibility that Plaintiff's

6    solicitation has already resulted in the disclosure by P1 Employee Advisors of documents that are

7    confidential and/or proprietary to Defendant or its clients.  Ameriprise Financial has also raised

8    this issue with Plaintiff's counsel in correspondence, and has received no assurance whatsoever

9    that they have not already collected such items.  Plaintiff's apparent collection of documents from

10   P1 Employee Advisors is an impermissible exercise in self-help evidence gathering, and a

11   circumvention of the discovery rules.

12        Courts have ordered the return of documents belonging to a party that were improperly

13   disclosed to opposing counsel.  See, e.g., Pillsbury, Madison & Sutro v. Schectman, 55 Cal. App.

14   4th 1279, 1288 (Cal. App. 1st Dist. 1997) (affirming injunction against plaintiff ordering the

15   return of documents belonging to opposing party); Conn v. Superior Court, 196 Cal. App. 3d 774

16   (Cal. App. 2nd 1987) (ordering client and attorney to return documents belonging properly to

17   former employer of client).  Indeed, "[d]iscovery in the litigation context presupposes ownership

18   of documents will remain with whomever holds title, while allowing access to the trier of fact,

19   and litigants, in specifically delineated legal proceedings."  Pillsbury, 55 Cal. App. 4th at 1288.

20        Plaintiff should not be allowed to engage in self-help discovery by sending a solicitation

21   or, under the false pretense of attorney-client privilege, collecting documents that belong to

22   Ameriprise Financial from Ameriprise Financial's own employees.  Plaintiff's actions interfere

23   with Ameriprise Financial's property interests, and also prevent it from exercising its right to

24   review such documents for potential privilege, confidentiality, and responsiveness.  Plaintiff may

25   only receive access to Ameriprise Financial's documents through the proper discovery channels.

26   As a result, the Court should require Plaintiff to produce any documents it has already received

27

28

from P1 Employee Advisors, and should further prohibit any such solicitation and collection of documents in the future.

## CONCLUSION

For the foregoing reasons, Defendant respectfully asks the Court to grant its Motion and the relief requested herein.

Dated:  January 30, 2008                     DORSEY & WHITNEY LLP


                                              By:    /s/ Edward B. Magarian
                                                 EDWARD B. MAGARIAN
                                                 Attorneys for Defendant
                                                 AMERIPRISE FINANCIAL
                                                 SERVICES, INC.