Karen E. Wentzel (SBN 112179)
DORSEY & WHITNEY LLP
1717 Embarcadero Road
Palo Alto, California 94303
(650) 857-1717 : phone
(650) 857-1288 : fax
Email:  efilingPA@dorsey.com

Edward B. Magarian (admitted *pro hac vice*)
Zeb-Michael Curtin (admitted *pro hac vice*)
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402
(612) 340-2600 : phone
(612) 340-2777 : fax
Email: magarian.edward@dorsey.com
       curtin.zeb@dorsey.com

Attorneys for Defendant
AMERIPRISE FINANCIAL
SERVICES, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SYLVIA JOHNSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AMERIPRISE FINANCIAL SERVICES, INC., and DOES 1 through 100, inclusive,<br><br>Defendants. | **Case No.  C 07-03168 PJH**<br><br>**DEFENDANT'S REPLY MEMORANDUM REGARDING MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM**<br><br>**Date: February 27, 2008**<br>**Time: 9:00 a.m.** |

# INTRODUCTION

Defendant Ameriprise Financial Services, Inc. ("Ameriprise Financial" or "Company") moves to amend its Answer so that it can interpose one additional affirmative defense and assert a single counterclaim against Plaintiff, and, if a class is certified,[1] against any putative class member who does not opt out. The Company's affirmative defense and counterclaim are straightforward. They are both based on the fact that Plaintiff and putative class members were offered a choice when they affiliated with Ameriprise Financial. They could choose to affiliate with Ameriprise Financial under the franchise platform, with its corresponding higher payouts, equity rights, and other business related advantages. Alternatively, Plaintiff and the putative class could choose the employee platform, with its corresponding lower payouts.. Plaintiff and the putative class all chose the franchise platform, and the higher rates associated with that platform, and by so doing affirmatively rejected the employee platform and its lower payout rates.

Now, Plaintiff not only asks this Court to ignore their franchise election and to declare that she and the putative class were really employees, but at the same time block any equitable claims or remedies Ameriprise Financial might have. In essence, Plaintiff wants to have her cake and eat it too. She wants a declaration that she was truly an employee and thereby obtain the benefits of such a status under California wage and hour law, but she wants to retain the extra compensation she received as a result of her rejection of the employee platform and election of the franchise platform. Equity demands that Ameriprise Financial be allowed to pursue its claim in the event Plaintiff is somehow successful at challenging the very franchisee relationship she opted to pursue.

In response, Plaintiff makes unfounded rhetorical accusations directed at the Company[2] in a Memorandum that also fails to recognize the fundamental facts underlying Defendant's proposed amendment and greatly exaggerates the holdings of most of the cases cited therein.

---

[1] Ameriprise Financial will argue that class certification is inappropriate in accordance with the time frame set in the scheduling order previously issued by this Court.

[2] Plaintiff variously accuses Defendant of "threatening" and "attempt[ing] to intimidate putative class members"; of "request[ing] that this Court act as its accomplice in further profiting from . . . misconduct"; and "deliberately ignor[ing]" authority. See Pltf's Mem. at 1, 4. Plaintiff's assertions are

## ARGUMENT

### A. Putative Class Members Made A Decision To Affiliate With Ameriprise Financial As Franchisees, Rather Than Employees

Plaintiff's memorandum in opposition ignores the fundamental facts underlying Defendant's proposed amended answer and counterclaim: Plaintiff and each putative class member (P2 Independent Advisor) was given **the choice** of whether to affiliate with Ameriprise Financial as an employee under the P1 platform or a franchisee under the P2 platform. Plaintiff and each putative class member *affirmatively chose* to be affiliated with Ameriprise Financial as a franchisee. Prior to their decisions, Ameriprise Financial provided them with detailed information regarding the differences between affiliating with the Company as a franchisee (which affiliation would offer greater freedom, including the ability to develop equity in one's own independent financial advising practice and **to receive much higher payout rates**), or to become a P1 advisor employed by Ameriprise (with less freedom, no equity rights, and much lower payouts). See Def's Amended Answer and Counterclaim (attached as Ex. A to Defendant's previously-submitted [Proposed] Order) at ¶¶ 112, 116-119. Armed with such information, Plaintiff and each putative class member affirmatively chose the franchisee platform, knowingly receiving higher payouts and other advantages over P1 employee advisors. See Complaint ¶ 23 (defining class as P2 Independent Advisors in California, who, by definition, all signed Franchise Agreements); Franchise Agreement execution page of Plaintiff Sylvia Johnson (attached as Ex. A to the Declaration of Zeb-Michael Curtin submitted herewith).

After electing the franchise platform and its higher payout rates, Plaintiff Sylvia Johnson now claims years later that she was improperly classified as a franchisee and/or independent contractor. She seeks to retain the benefits she received under the franchise affiliation (especially the higher payout), while at the same time claiming she should have been treated as an employee of Ameriprise Financial—**the option she expressly rejected years ago**.

---

(continued…)

unfounded and without merit. As discussed in the Company's opening brief and this Reply, Ameriprise Financial's affirmative defense and counterclaim are reasonable and valid.

-3-

**DEFENDANT'S REPLY MEMO. REGARDING MOTION TO AMEND; CASE NO. C 07-3168**

1    This is not the typical case in which a company has unilaterally imposed one job classification as a condition of employment on a take-it-or-leave-it basis.  Here, the Plaintiff is challenging the very same job classification she affirmatively chose after being apprised of the clearly-defined differences between the two platforms, and under which she benefited for several years.  All advisors were given a choice and knew they could be affiliated with Ameriprise Financial regardless of the choice they made.  Accordingly, Plaintiff's repeated assertions that this is a case regarding "a [d]efendant's own unfair or unlawful conduct" and an attempt by the defendant to benefit from that conduct is misleading.  Ameriprise Financial did not "classify" (much less "misclassify") any of these advisors.  They affirmatively chose the franchise option after full disclosure.  Certainly, there is nothing improper about the counterclaim Ameriprise Financial seeks to bring, or the additional affirmative defense the Company seeks to assert.  See, e.g., Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612, 627 (1992) (noting "a person who has been unjustly enriched at the expense of another is required to make restitution to the other") (cited in Def's Motion for Leave to File Amended Answer and Counterclaim ("Def's Motion") at 6).

### B.  Defendant's Proposed Answer And Counterclaim Are Not Futile

As an initial matter, Plaintiff's contention that "a court should deny a party's request for leave to amend the pleading if the leave sought therein contradicts the interest of justice" (see Pltf's Mem. at 3) is not supported by the very case she cites.  Rather, the Shipner decision out of the Eleventh Circuit simply reiterates the basic rule that "Rule 15(a) severely restricts the district court's freedom, directing that **leave to amend shall be freely given when justice so requires**."  See Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989) (emphasis added).  The Eleventh Circuit does not say anything close to what Plaintiff ascribes to it.

Even if it had, the proper standard this Court must follow is the one announced by the Ninth Circuit and cited in Defendant's moving papers:  Leave to amend should be granted unless there is evidence of bad faith, undue delay, prejudice to the opposing party, or the proposed amendment is futile.  See Def's Motion at 4 (citing Griggs v. Pace Am. Group, 170 F.3d 877, 880

(9th Cir. 1999)).  Moreover, it is well-established that a court's analysis of these factors "should be performed with all inferences in favor of granting the motion."  Id. at 880.

Relying on case law that does not even support her position, Plaintiff attempts to argue that Defendant's proposed defense and counterclaim are futile.  First, Plaintiff asserts that:  "An 'equitable' defense or claim that is premised on a Defendant's own unfair or unlawful conduct is invalid."  Pltf's Mem. at 3.  Later, Plaintiff contends that "[i]t is well settled that purportedly 'equitable' defenses will not be countenanced by the courts when premised on the Defendant's *own misconduct*."  Id. at 4 (emphasis in original).  However, the case Plaintiff cites and attempts to rely upon, Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163 (2000), does not support Plaintiff's overbroad statements.  To the contrary, Cortez establishes that Defendant's proposed amendment is not futile:

> We agree that equitable defenses may not be asserted to ***wholly defeat*** a UCL claim since such claims arise out of unlawful conduct.  It does not follow, however, that equitable considerations may not guide the court's discretion in fashioning the equitable remedies authorized by section 17203. . . . .  Therefore, what would otherwise be equitable defenses may be considered by the court when the court considers its discretion over which, if any, equitable remedies authorized by section 17203 should be awarded. . . .
>
> Therefore, in addition to those defenses which might be asserted to a charge of violation of the statute that underlies a UCL action, a UCL defendant may assert equitable considerations.  In deciding whether to grant the remedy or remedies sought by a UCL plaintiff**, the court must permit the defendant to offer such considerations.**

Id. at 179-81 (emphasis added).  Stated differently, "[a] court cannot properly exercise an equitable power without consideration of the equities **on both sides of a dispute**."  Id. at 180 (emphasis added).

Likewise here, Defendant is not seeking to assert its defense and/or counterclaim to "wholly defeat" any liability.  Rather, the proposed answer and counterclaim clearly relate only to any remedies available to individuals, if the Court should somehow determine the P2 Independent Advisors/franchisees were employees covered by California wage-and-hour laws.  See Def's Amended Answer and Counterclaim (attached as Ex. A to Defendant's previously-submitted [Proposed] Order) at ¶¶ 112-119.  Indeed, in Cortez the court acknowledged the defendant-

employer's equitable "defenses" even though the defendant-employer had violated a California wage-and-hour law and the action was brought under the Unfair Competition Law (as here). See 23 Cal. 4th at 170, 179-80.

Plaintiff also attempts to rely upon, and ascribes an equally-overbroad holding to, the decision of Ticconi v. Blue Shield of Calif. Life & Health Ins. Co., 68 Cal.Rptr.3d 785, 797 (2007). As an initial matter, Civil L.R. 3-4(e) prohibits Plaintiff's citation of the Ticconi decision, which is clearly marked "NOT CITABLE—SUPERSEDED BY GRANT OF REHEARING." See Exhibit B to the Declaration of Zeb-Michael Curtin submitted herewith. Even if it were citable and could be considered by this Court (which it is not and cannot be), the Ticconi decision does little more than affirm the holding of Cortez excerpted above, and equally fails to support Plaintiff's position. See id. at 796-97 (discussing and citing Cortez, and explaining, "Of course, the trial court has the discretion to consider equitable defenses . . . in creating the *remedies* authorized by [section] 17203. Such defenses may not be used, however, to wholly defeat the UCL cause of action."). Accordingly, when considered in the proper factual and legal context, Plaintiff's allegations of futility fail.

### C. Plaintiff Has Not Demonstrated The Proposed Amendment Will Cause Prejudice

Plaintiff's next contention is that she would suffer prejudice if Defendant is permitted to amend its answer to add the proposed defense and counterclaim. Plaintiff, as the party opposing amendment, "bears the burden of showing prejudice." See Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing and quoting DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186-87 (9th Cir. 1987)). She has not discharged (and cannot discharge) this burden.

As a preliminary matter, Ameriprise Financial first asked Plaintiff if she would stipulate to the amendment. Although Plaintiff refused to stipulate, she did not base her refusal on any alleged prejudice. If Plaintiff truly believed that Defendant's proposed affirmative defense and counterclaim would prejudice her case in any way, one would expect that she would at least have

mentioned that belief in her letter. She did not. <u>See</u> Ex. 4 to the Declaration of Edward B. Magarian submitted with Defendant's Motion on Dec. 20, 2007 (Letter from C. Lin to E. Magarian (Nov. 26, 2007)).

The fact that Plaintiff did not raise the issue of prejudice is not surprising for two reasons. First, Ameriprise Financial first brought to Plaintiff's attention the facts underlying Defendant's contemplated counterclaim for restitution **within two weeks** of receiving the Court's scheduling order and before the service of any discovery. <u>Compare</u> Ex. A to the Declaration of Carrie S. Lin, Esq. in Opposition to Def's Motion for Leave to File Amended Answer and Counterclaim (Minute Order of October 11, 2007), <u>with</u> Ex. 1 to the Declaration of Edward B. Magarian submitted with Defendant's Motion on Dec. 20, 2007 (Letter from E. Magarian to M. Bainer and C. Lin (Oct. 22, 2007)). On November 14, 2007, just one month after receiving the Court's scheduling order, Ameriprise Financial provided Plaintiff with a copy of the very proposed amendment that is the subject of this motion. <u>See</u> Ex. 3 to the Declaration of Edward B. Magarian submitted with Defendant's Motion on Dec. 20, 2007 (Letter from E. Magarian to S. Cole (Nov. 14, 2007)). When Plaintiff refused to stipulate, Ameriprise Financial scheduled this motion.

Second, while Plaintiff correctly notes that prejudice may occur where a proposed amendment "radically shifts" the nature of the case (see <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990), cited in Pltf's Mem. at 5), that is not the case here. In fact, the proposed amendment does not change any of Defendant's legal theories. Instead, the proposed defense and counterclaim arise from and are related to the same set of occurrences underlying Plaintiff's Complaint. Accordingly, there can be no prejudice. <u>See</u> <u>Hip Hop Beverage Corp. v. RIC Representcoes Importacao e Comercio Ltda.</u>, 220 F.R.D. 614, 622 (C.D. Cal. 2003) (rejecting allegation of undue prejudice where the issues contained in the defendant's proposed counterclaim "[we]re substantially related to the issues contained in [the plaintiffs'] Complaint") (cited and quoted in Defendant's Motion at 4).[3]

---

[3] Plaintiff does not offer any reasons how or why Defendant's proposed amendment might "radically shift" the nature of this case. Rather, she simply concludes, without citation to authority, that

Moreover, the facts underlying the <u>Morongo</u> decision cited by Plaintiff are easily distinguished from the instant case. In <u>Morongo</u>, nearly two years elapsed between the time the moving party (the plaintiff) initially filed its complaint and sought to file an amended complaint. The original complaint alleged a violation of a tribal ordinance against a "non-Indian." <u>See</u> 831 F.2d at 1077. The plaintiff sought to file an amended complaint alleging new claims based upon the Racketeer Influenced and Corrupt Organizations Act (RICO) and federal criminal statutes. <u>Id.</u> at 1079. This inordinate delay, coupled with the fact that the new claims truly were a radical shift from the initial complaint, warranted denial of the motion to amend.[4] No such delay is present in this case.

## **CONCLUSION**

For the foregoing reasons, in addition to the reasons stated in its Motion, Defendant respectfully requests that this Court grant its Motion for Leave to File Amended Answer and Counterclaim.

Dated: February 13, 2008         DORSEY & WHITNEY LLP


By:   s/ Zeb-Michael Curtin
ZEB-MICHAEL CURTIN
Attorneys for Defendant
AMERIPRISE FINANCIAL
SERVICES, INC.

---

(continued…)

"requiring the non-moving party to litigate or conduct discovery on a defense or claim that is void as a matter of public policy similarly causes prejudice." Pltf's Mem. at 5. As explained above, Plaintiff's futility argument rings hollow and Defendant's proposed defense and counterclaim are valid.

[4] Plaintiff's citation to <u>Gentry v. Superior Court</u>, 42 Cal. 4th 443 (2007), has nothing to do with Ameriprise Financial's motion. <u>See</u> Pltf's Mem. at 5. The <u>Gentry</u> case concerned a challenge to an employer's class arbitration waiver provision. As no such provision is being challenged here, and there is no credible allegation that Ameriprise Financial is trying to prevent any putative class members / franchisees from bringing a class action in court, Plaintiff's discussion of this case makes no sense.