Copyright 2008 SHEPARD'S(R) - 1 Citing references

**Ticconi v. Blue Shield of California Life & Health Ins. Co., 157 Cal. App. 4th 707, 68 Cal. Rptr. 3d 785, 2007 Cal. App. LEXIS 1991 (Cal. App. 2d Dist. 2007)**

*SHEPARD'S Signal(TM):  Warning: Negative treatment is indicated*
Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *KWIC*
Citing Ref. Signal Legend:
  {Warning} -- negative treatment indicated
  {Questioned} -- validity questioned by citing refs.
  {Caution} -- possible negative treatment
  {Positive} -- positive treatment indicated
  {Analysis} -- cited and neutral analysis indicated
  {Cited} -- citation information available

## SHEPARD'S SUMMARY

## PUBLICATION STATUS

Not Citable; Superseded by Grant of Rehearing (See Cal. Rules of Court)

## SUBSEQUENT APPELLATE HISTORY ( 1 citing reference )

1.   **Rehearing granted, Depublished by,  (Jan. 3, 2008)**

Page 1

**EXHIBIT B**

LEXSEE


Warning
As of: Feb 13, 2008

AUGUSTO TICCONI, Plaintiff and Appellant, v. BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY et al., Defendants and Respondents.

B190427

COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION THREE

157 Cal. App. 4th 707; 68 Cal. Rptr. 3d 785; 2007 Cal. App. LEXIS 1991

December 4, 2007, Filed

**NOTICE:**

NOT CITABLE--SUPERSEDED BY GRANT OF REHEARING

**PRIOR HISTORY:** [***1]
Superior Court of Los Angeles County, No. BC330989, Wendell Mortimer, Jr., Judge.
Ticconi v. Blue Shield of California Life & Health Ins. Co., 153 Cal. App. 4th 1123 [63 Cal. Rptr. 3d 698, 2007 Cal. App. LEXIS 1259] (Cal. App. 2d Dist., 2007)

**DISPOSITION:** Reversed with directions.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insured sued defendant insurer, alleging the insurer violated Ins. Code, §§ 10113 & 10381.5, by failing to attach his application for short-term health and accidental death insurance to or endorse it on the policy when issued, and later rescinding the policy on the ground he had made misrepresentations in the application. The Los Angeles County Superior Court, California, denied class certification. The insured appealed.

**OVERVIEW:** The instant court concluded that the trial court's ruling denying class certification was erroneous. The insurer could not raise equitable defenses to defeat the insured's cause of action under California's Unfair Competition Law (UCL), Bus. & Prof. Code, § 17200, nor could the insurer raise the defense of fraud based on alleged misrepresentations that the insured made in his application for insurance because the application was neither attached to nor endorsed on the policy when issued. To allow the insurer to argue as a defense to the UCL claim of postclaims underwriting that putative class plaintiffs had unclean hands because they misrepresented material medical information on unattached and unendorsed insurance applications, would be to sanction the insurer's unlawful and unfair conduct. The trial court relied on erroneous legal assumptions when it weighed the legal and factual issues of fraud and unclean hands in deciding to deny the insured's motion for class certification. The factual and legal issues going to liability were universal to all class members, with the result that common issues of law and fact predominated over individual issues.

**OUTCOME:** The order denying class certification was reversed, and the case was remanded with directions that the trial court consider whether the insured was an adequate and typical class representative.

**CORE TERMS:** insured's, unfair, insurer, misrepresentation, unclean hands, class actions, endorsed, underwriting, 'postclaim, certification, disability, equitable defenses, class members, coverage, cause of action, class certification, unfair competition law, unattached, defeat, equitable, rescinded, italics, insurance policy, community of interest, unendorsed, void", health insurance, business practice, nondisclosure, issuing

Page 1

**LexisNexis(R) Headnotes**

*Civil Procedure > Equity > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview*
*Torts > Business Torts > Unfair Business Practices > Defenses*
[HN1]Equitable defenses cannot be used to defeat a cause of action under California's Unfair Competition Law, Bus. & Prof. Code, § 17200.

*Insurance Law > Claims & Contracts > Contract Formation > Applications*
*Insurance Law > Disability Insurance > General Overview*
*Insurance Law > Life Insurance > General Overview*
[HN2]See Ins. Code, § 10113.

*Insurance Law > Claims & Contracts > Contract Formation > Applications*
[HN3]See Ins. Code, § 10381.5.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
[HN4]Code Civ. Proc., § 382, authorizes class actions when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court. The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. The certification question is essentially a procedural one that does not ask whether an action is legally or factually meritorious. The community of interest requirement for class certification embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. A plaintiff has the burden to establish the requisite community of interest, and the proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members. The ultimate question in every case of this type is whether the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.

*Civil Procedure > Class Actions > Appellate Review*
*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Appeals > Standards of Review > Substantial Evidence > General Overview*
[HN5]Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. The denial of certification to an entire class is an appealable order, but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed unless (1) improper criteria were used; or (2) erroneous legal assumptions were made. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal even though there may be substantial evidence to support the trial court's order. Accordingly, the appellate court must examine the trial court's reasons for denying class certification. Any valid pertinent reason stated will be sufficient to uphold the order.

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation*
*Antitrust & Trade Law > Consumer Protection > False Advertising > State Regulation*
*Torts > Business Torts > Unfair Business Practices > Elements*
[HN6]"Unfair competition" under California's Unfair Competition Law, Bus. & Prof. Code, § 17200, means any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Bus. & Prof. Code, § 17500, the false advertising law.

*Torts > Business Torts > Unfair Business Practices > Elements*
[HN7]The scope of California's Unfair Competition Law (UCL), Bus. & Prof. Code, § 17200 et seq., is broad. By defining unfair competition to include any unlawful business act or practice, the UCL permits violations of other laws to be treated as unfair competition that is independently actionable. An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law. Virtually any law - federal, state or local - can serve as a predicate for an action under § 17200.

*Torts > Business Torts > Unfair Business Practices > Elements*

[HN8]The unfair standard, the second prong of Bus. & Prof. Code, § 17200, provides an independent basis for relief from an unfair business act or practice. This standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. The court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. An unfair business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

*Insurance Law > Claims & Contracts > Incontestability > Disability & Health Insurance Policies*
*Insurance Law > Disability Insurance > General Overview*
[HN9]Postclaims underwriting of disability, i.e., health, insurance, Ins. Code, § 106, is prohibited by Ins. Code, § 10384. Particularly with low limits policies, insurers may choose not to incur the expense of investigating every application received before issuing the policy. Instead, subject to the policy's incontestability clause, insurers may wait until a claim arises to check the accuracy of the insured's declarations and application. This is often referred to as postclaims underwriting. No insurer issuing or providing disability insurance covering hospital, medical or surgical expenses may engage in postclaim underwriting.

*Insurance Law > Disability Insurance > General Overview*
[HN10]Ins. Code, § 106, defines disability insurance as insurance appertaining to injury, disablement or death resulting to the insured from accidents, and appertaining to disablements resulting to the insured from sickness.

*Insurance Law > Disability Insurance > General Overview*
[HN11]See Ins. Code, § 10384.

*Insurance Law > Claims & Contracts > Incontestability > Disability & Health Insurance Policies*
*Insurance Law > Disability Insurance > General Overview*
[HN12]Ins. Code, § 10113, prohibits incorporating applications into a disability insurance policy by reference unless they are endorsed upon or attached to the policies when issued. If a copy of an application for a policy is not attached to or endorsed on the policy when the policy is issued, then the insured is not bound by statements made in that application. Ins. Code, § 10381.5.

*Insurance Law > Claims & Contracts > Incontestability > Disability & Health Insurance Policies*
*Insurance Law > Disability Insurance > General Overview*
[HN13]A consequence of violating Ins. Code, §§ 10113 & 10381.5, is that the insurer may not invoke the defense of misrepresentations in or omissions from the unattached and unendorsed application.

*Insurance Law > Claims & Contracts > Incontestability > Disability & Health Insurance Policies*
*Insurance Law > Disability Insurance > General Overview*
*Insurance Law > Industry Regulation > Unfair Business Practices > General Overview*
*Torts > Business Torts > Unfair Business Practices > General Overview*
[HN14]Because it contravenes Ins. Code, §§ 10113, 10381.5, & 10384, the following conduct is unlawful: failing to attach applications to or endorse them on disability policies when issued and later engaging in postclaims underwriting by holding insureds to statements in those unattached and unendorsed applications as grounds for voiding the policies. Such unlawful conduct serves as a predicate unlawful practice to a cause of action under California's Unfair Competition Law, Bus. & Prof. Code, § 17200.

*Civil Procedure > Equity > Maxims > Clean Hands Principle*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Torts > Business Torts > Unfair Business Practices > Defenses*
[HN15]The equitable defense of unclean hands is not a defense to an unfair trade or business practices claim based on violation of a statute. To allow such a defense would be to judicially sanction the defendant for engaging in an act declared by statute to be void or against public policy.

*Civil Procedure > Equity > Maxims > Clean Hands Principle*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*

[HN16]The doctrine of refusing to aid a party with unclean hands has no application where the failure to restrain an act because the parties are in pari delicto would result in permitting an act declared by statute to be void or against public policy.

*Civil Procedure > Equity > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview*
*Insurance Law > Industry Regulation > Unfair Business Practices > General Overview*
*Torts > Business Torts > Unfair Business Practices > Defenses*
[HN17]Equitable defenses may not be asserted to wholly defeat a claim under California's Unfair Competition Law (UCL), Bus. & Prof. Code, § 17200, since such claims arise out of unlawful conduct. The equities may be considered when the trial court exercises its discretion to fashion a remedy under Bus. & Prof. Code, § 17203. But, equitable defenses may not be used to defeat the cause of action under the UCL. In general, as between a person who is enriched as the result of his or her violation of the law, and a person intended to be protected by the law who is harmed by its violation, for the violator to retain the benefit would be unjust.

*Civil Procedure > Equity > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview*
*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
[HN18]Where they are not to be considered, legal and factual issues that go to equitable defenses cannot outweigh common issues related to liability when ruling on a motion for class certification.

*Governments > Courts > Judicial Precedents*
*Governments > Courts > Rule Application & Interpretation*
[HN19]In the absence of California authority, California courts may look to the Federal Rules of Civil Procedure and to the federal cases interpreting them.

*Civil Procedure > Class Actions > Prerequisites > Commonality*
[HN20]Individual issues will often be present in a class action, especially in connection with individual defenses against class plaintiffs, rights of individual class members to recover in the event a violation is established, and the type or amount of relief individual class members may be entitled to receive. Nevertheless, the common issues need not be dispositive of the litigation. The fact that class members must individually demonstrate their right to recover, or that they may suffer varying degrees of injury, will not bar a class action; nor is a class action precluded by the presence of individual defenses against class plaintiffs. Moreover, a court has the discretion to limit a class suit to liability issues only, or to select common claims and defenses.

*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
*Civil Procedure > Class Actions > Prerequisites > Typicality*
[HN21]When determining whether a named plaintiff's claims are typical of those of the class, and whether the plaintiff can fairly and adequately represent the class, the trial court may take into account whether the plaintiff has already obtained his or her individual benefits from the action. Plaintiffs who have nothing at stake often will not devote sufficient energy to the prosecution of the action; further, the receipt of benefits by the named plaintiffs may sometimes create a conflict of interest between the class and its would-be representatives. By contrast, the court may find that the named plaintiff will continue fairly to represent the class, and, therefore, permit him or her to continue the class litigation.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
*Civil Procedure > Dismissals > General Overview*
[HN22]A prospective defendant is not allowed to avert a class action by picking off prospective plaintiffs one-by-one. Thus, precertification payment of the named plaintiff's claim does not automatically disqualify the named plaintiff as a class action representative. Even if the named plaintiff receives all the benefits that he or she seeks in the complaint, such success does not divest the named plaintiff of the duty to continue the action for the benefit of others similarly situated. If, however, the trial court concludes that the named plaintiff can no longer suitably represent the class, it should afford the named plaintiff the opportunity to amend the complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative. If, after the trial court has thus extended an opportunity to amend, the class still lacks a suitable representative, the trial court may conclude that it must dismiss the action. At this point, the further issue arises whether the trial court must notify the class of the proposed dismissal.

**SUMMARY:**

CALIFORNIA OFFICIAL REPORTS SUMMARY

The trial court entered an order denying an insured's motion under Code Civ. Proc., § 382, to certify a class in the insured's unfair competition action arising from his insurer's denial of health insurance benefits based on alleged misrepresentations in the application. The trial court denied class certification on the ground the insurer's defenses of fraud and unclean hands raised individual issues that predominated over the common issues related to liability. (Superior Court of Los Angeles County, No. BC330989, Wendell Mortimer, Jr., Judge.)

The Court of Appeal reversed the order and remanded the case with directions that the trial court consider whether the insured was an adequate and typical class representative. The court concluded that the trial court's ruling denying class certification was erroneous. The insurer could not raise equitable defenses to defeat the insured's cause of action under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), nor could the insurer raise the defense of fraud based on alleged misrepresentations that the insured made in his application for insurance because the application was neither attached to nor endorsed on the policy when issued. To allow the insurer to argue as a defense to the UCL claim of postclaims underwriting that putative class plaintiffs had unclean hands because they misrepresented material medical information on unattached and unendorsed insurance applications, would be to sanction the insurer's unlawful and unfair conduct. The trial court relied on erroneous legal assumptions when it weighed the legal and factual issues of fraud and unclean hands in deciding to deny the insured's motion for class certification. The factual and legal issues going to liability were universal to all class members, with the result that common issues of law and fact predominated over individual issues. (Opinion by Aldrich, J., with Croskey, Acting P. J., and Kitching, J., concurring.) [*708]

**HEADNOTES**

CALIFORNIA OFFICIAL REPORTS HEADNOTES

**(1) Insurance Contracts and Coverage § 36--Avoidance of Policy--Misrepresentations and Nondisclosure by Insured--Unattached Application--Unfair Competition Law.**--An insurer could not raise equitable defenses to defeat an insured's cause of action under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), nor could the insurer raise the defense of fraud based on alleged misrepresentations that the insured made in his application for short-term health and accidental death insurance, where the application was neither attached to nor endorsed on the policy when issued (Ins. Code, §§ 10113, 10381.5).

[Cal. Insurance Law & Practice (2007) ch. 21, § 21.06.]

**(2) Parties § 6.3--Class Actions--Certification--Community of Interest.**--Code Civ. Proc., § 382, authorizes class actions when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court. The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. The certification question is essentially a procedural one that does not ask whether an action is legally or factually meritorious. The community of interest requirement for class certification embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. A plaintiff has the burden to establish the requisite community of interest, and the proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members. The ultimate question in every case of this type is whether the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.

**(3) Unfair Competition § 2--Definitions and Distinctions.**--"Unfair competition" under the unfair competition law (Bus. & Prof. Code, § 17200), means any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Bus. & Prof. Code, § 17500, the false advertising law.

**(4) Unfair Competition § 1--Scope--Unlawful Business Activity or Practice.**--The scope of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) is broad. By defining unfair competition to [*709] include any unlawful business act or practice, the UCL permits violations of other laws to be treated as unfair competition that is independently actionable. An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law. Virtually any law--federal, state or local--can serve as a predicate for an action under § 17200.

**(5) Unfair Competition § 4--Acts Constituting--Broad Standard--Impact on Alleged Victim--Utility of De-

fendant's Conduct.--The unfair standard, the second prong of Bus. & Prof. Code, § 17200, provides an independent basis for relief from an unfair business act or practice. This standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. The court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. An unfair business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

**(6) Insurance Contracts and Coverage § 36--Avoidance of Policy--Misrepresentations and Nondisclosure by Insured--Postclaims Underwriting.--**Postclaims underwriting of disability, i.e., health, insurance (Ins. Code, § 106) is prohibited by Ins. Code, § 10384. Particularly with low limits policies, insurers may choose not to incur the expense of investigating every application received before issuing the policy. Instead, subject to the policy's incontestability clause, insurers may wait until a claim arises to check the accuracy of the insured's declarations and application. This is often referred to as postclaim underwriting. No insurer issuing or providing disability insurance covering hospital, medical or surgical expenses may engage in postclaim underwriting.

**(7) Insurance Contracts and Coverage § 36--Avoidance of Policy--Misrepresentations and Nondisclosure by Insured--Unattached Application.--**Ins. Code, § 10113, prohibits incorporating applications into a disability insurance policy by reference unless they are endorsed upon or attached to the policies when issued. If a copy of an application for a policy is not attached to or endorsed on the policy when the policy is issued, then the insured is not bound by statements made in that application (Ins. Code, § 10381.5). [*710]

**(8) Insurance Contracts and Coverage § 36--Avoidance of Policy--Misrepresentations and Nondisclosure by Insured--Unattached Application.--**A consequence of violating Ins. Code, §§ 10113 & 10381.5, is that the insurer may not invoke the defense of misrepresentations in or omissions from the unattached and unendorsed application.

**(9) Insurance Contracts and Coverage § 36--Avoidance of Policy--Misrepresentations and Nondisclosure by Insured--Postclaims Underwriting--Unattached Application--Unfair Competition Law.--**Because it contravenes Ins. Code, §§ 10113, 10381.5 & 10384, the following conduct is unlawful: failing to attach applications to or endorse them on disability policies when issued and later engaging in postclaims underwriting by holding insureds to statements in those unattached and unendorsed applications as grounds for voiding the policies. Such unlawful conduct serves as a predicate unlawful practice to a cause of action under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

**(10) Unfair Competition § 8--Actions--Defenses--Unclean Hands.--**The equitable defense of unclean hands is not a defense to an unfair trade or business practices claim based on violation of a statute. To allow such a defense would be to judicially sanction the defendant for engaging in an act declared by statute to be void or against public policy.

**(11) Equity § 6.2--Principles and Maxims--Unclean Hands.--**The doctrine of refusing to aid a party with unclean hands has no application where the failure to restrain an act because the parties are in pari delicto would result in permitting an act declared by statute to be void or against public policy.

**(12) Unfair Competition § 8--Actions--Equitable Defenses.--**Equitable defenses may not be asserted to wholly defeat a claim under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), since such claims arise out of unlawful conduct. The equities may be considered when the trial court exercises its discretion to fashion a remedy under Bus. & Prof. Code, § 17203. But, equitable defenses may not be used to defeat the cause of action under the UCL. In general, as between a person who is enriched as the result of his or her violation of the law, and a person intended to be protected by the law who is harmed by its violation, for the violator to retain the benefit would be unjust.

**(13) Parties § 6--Class Actions--Certification--Equitable Defenses.--**Where they are not to be considered, legal and factual issues that go to equitable defenses cannot outweigh common issues related to liability when ruling on a motion for class certification. [*711]

**(14) Courts § 40--Decisions and Orders--Stare Decisis--Opinions of Federal Courts--Federal Rules of Civil Procedure.--**In the absence of California authority, California courts may look to the Federal Rules of Civil Procedure and to the federal cases interpreting them.

**(15) Parties § 6--Class Actions--Common Issues--Individual Defenses.--**Individual issues will often be present in a class action, especially in connection with

individual defenses against class plaintiffs, rights of individual class members to recover in the event a violation is established, and the type or amount of relief individual class members may be entitled to receive. Nevertheless, the common issues need not be dispositive of the litigation. The fact that class members must individually demonstrate their right to recover, or that they may suffer varying degrees of injury, will not bar a class action; nor is a class action precluded by the presence of individual defenses against class plaintiffs. Moreover, a court has the discretion to limit a class suit to liability issues only, or to select common claims and defenses.

(16) **Parties § 6.2--Class Actions--Adequacy of Representation--Typicality of Named Plaintiff's Claims.--** When determining whether a named plaintiff's claims are typical of those of the class, and whether the plaintiff can fairly and adequately represent the class, the trial court may take into account whether the plaintiff has already obtained his or her individual benefits from the action. Plaintiffs who have nothing at stake often will not devote sufficient energy to the prosecution of the action; further, the receipt of benefits by the named plaintiffs may sometimes create a conflict of interest between the class and its would-be representatives. By contrast, the court may find that the named plaintiff will continue fairly to represent the class, and, therefore, permit him or her to continue the class litigation.

(17) **Parties § 6.2--Class Actions--Adequacy of Representation--Precertification Payment of Named Plaintiff's Claim.--**A prospective defendant is not allowed to avert a class action by picking off prospective plaintiffs one-by-one. Thus, precertification payment of the named plaintiff's claim does not automatically disqualify the named plaintiff as a class action representative. Even if the named plaintiff receives all the benefits that he or she seeks in the complaint, such success does not divest the named plaintiff of the duty to continue the action for the benefit of others similarly situated. If, however, the trial court concludes that the named plaintiff can no longer suitably represent the class, it should afford the named plaintiff the opportunity to amend the complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative. If, after the trial court has [\*712] thus extended an opportunity to amend, the class still lacks a suitable representative, the trial court may conclude that it must dismiss the action. At this point, the further issue arises whether the trial court must notify the class of the proposed dismissal.

**COUNSEL:** Gianelli & Morris, Timothy J. Morris; and David A. Lingenbrink for Plaintiff and Appellant.

Barger & Wolen, Martin E. Rosen, Sandra I. Weishart, John M. LeBlanc, Misty A. Murray; Manatt, Phelps & Phillips and Gregory N. Pimstone for Defendant and Respondent Blue Shield of California Life & Health Insurance Company.

No appearance for Defendant and Respondent California Physicians' Service.

**JUDGES:** Opinion by Aldrich, J., with Croskey, Acting P. J., and Kitching, J., concurring.

**OPINION BY:** Aldrich

**OPINION**

   [\*\*788] **ALDRICH, J.--**

INTRODUCTION

   The question before us is whether the trial court abused its discretion in denying a motion to certify a class under Proposition 64. Plaintiff Augusto Ticconi sued his health insurance provider defendant Blue Shield of California Life & Health Insurance Company (Blue Shield Life) [1] under the unfair competition law (Bus. & Prof. Code, § 17200 et seq. [\*\*789] (the UCL)). Plaintiff alleged that Blue Shield Life violated Insurance Code sections 10113, 10381.5 [2] by failing to attach his application to or endorse it on the insurance policy when issued, and later rescinding the policy on the ground he [\*\*\*2] had made misrepresentations in that application. The trial court denied plaintiff's motion for certification of a class of similarly situated insureds on the ground that Blue Shield Life's defenses of fraud and unclean hands raised individual issues that predominated over the common issues related to liability. Plaintiff appeals.

   1  Blue Shield of California is Blue Shield Life's parent company and is governed by the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq. (the Knox-Keene Act)).

   2  All further statutory references are to the Insurance Code, unless otherwise noted.

[\*713]

   (1) We conclude that the ruling denying class certification was erroneous.[HN1] Equitable defenses cannot be used to defeat a UCL cause of action and Blue Shield Life may not raise the defense of fraud based on statements that insureds made in an application for insurance where the application had been neither attached to nor endorsed on the policy when issued (§§ 10113, 10381.5). We also conclude that on remand the trial court must consider whether plaintiff is an adequate and typical

class representative. Accordingly, we reverse the order with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff [***3] alleged that he applied for a policy of short-term health and accidental death insurance from Blue Shield Life. Blue Shield Life markets such policies as temporary, 12-month coverage to individuals, such as college students or those changing jobs, who need insurance while they are waiting for permanent coverage.

Plaintiff alleged he answered truthfully all health questions posed on the policy application. Blue Shield Life issued plaintiff a policy effective January 1, 2004, which had a duration of one year and was noncancelable after 10 days. The policy contained language that encouraged plaintiff to examine the policy during this 10-day period. *His application was neither attached to the policy nor endorsed onto it when the policy was issued.* Once the 10-day period lapsed, plaintiff paid his monthly premiums.

During the policy period, plaintiff alleged, he required "significant health care services" which resulted in bills totaling well over $ 100,000. However, after he submitted the bills to Blue Shield Life for payment, Blue Shield Life rescinded his policy based on its view that plaintiff had made material misrepresentations in his application for insurance about the condition of [***4] his health. Plaintiff denied that he made any material misrepresentations in the application and alleged that a reasonable investigation would have shown this.

In his ensuing complaint, plaintiff alleged that Blue Shield Life issued his policy without attaching a copy of his application to, or endorsing a copy upon, the policy when issued in violation of section 10113, which forbids the incorporation of an application by reference. ³ He alleged, although he did not [*714] make any misrepresentations [**790] in the application, that pursuant to section 10381.5, ⁴ he was not bound by any statement made therein because that document had not been attached to or endorsed on the policy when issued. He also alleged that in the prior four years Blue Shield Life had rescinded a large number of policies that did not have the applications attached to or endorsed on the policies. The thrust of the complaint was that Blue Shield Life's rescission of the policy violated sections 10113 and 10381.5. Hence, the rescission of the policy was an unfair and unlawful business practice under the UCL. ⁵

---

3   Section 10113 reads: [HN2]"Every policy of life, disability, or life and disability insurance issued or delivered within this [***5] State ... by any insurer doing such business within this State shall contain and be deemed to constitute the entire contract between the parties *and nothing shall be incorporated therein by reference to any* constitution, by-laws, rules, *application or other writings*, of either of the parties thereto or of any other person, *unless the same are indorsed upon or attached to the policy; and all statements purporting to be made by the insured shall, in the absence of fraud, be representations and not warranties.* Any waiver of the provisions of this section shall be void." (Italics added.)

4   Section 10381.5 reads: [HN3]"*The insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof.* If any such policy delivered or issued for delivery to any person in this State shall be reinstated or renewed, and the insured or the beneficiary or assignee of such policy shall make written request to the insurer for a copy of the application, if any, for such reinstatement or renewal, the insurer shall within 15 days after the receipt of such request at its home office or any branch office [***6] of the insurer, deliver or mail to the person making such request, a copy of such application. If such copy shall not be so delivered or mailed, the insurer shall be precluded from introducing such application as evidence in any action or proceeding based upon or involving such policy or its reinstatement or renewal." (Italics added.)

    We note that section 10113 employs the word "indorsed," whereas section 10831.5 uses the spelling "endorsed." The former is simply a variation of the latter. (Webster's 3d New Internat. Dict. (3d ed. 1971) p. 1154, col. 2.) For consistency, we will use the word "endorsed" unless it appears in a quotation.

5   The trial court sustained Blue Shield of California's demurrer to plaintiff's causes of action for breach of contract and of the implied covenant of good faith and fair dealing.

---

Thereafter, plaintiff moved for certification of the class pursuant to Business and Professions Code section 17203. ⁶ Plaintiff proposed that the class be defined as "All California residents who were issued a policy of health insurance by Blue Shield Life ... and who thereafter had the policy rescinded by Blue Shield Life since March 28, 2001, based upon alleged misrepresentations [***7] contained in the policy application. This class specifically excludes any policyholders whose policy was issued in connection with an employee welfare

benefit plan governed by the Employee Retirement Income Security Act of 1974 ('ERISA')."

    6  As amended by Proposition 64, Business and Professions Code section 17203 reads in relevant part: "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state."

In opposing the certification motion, Blue Shield Life explained that short-term policies are wholly underwritten through the questions on the [*715] application. Applicants must be able to answer "no" truthfully to the application's medical questions to qualify for coverage. An applicant who answers "yes" to any question is unqualified for coverage. Of the 249,679 short-term health insurance policies Blue Shield Life issued between January 1, 2000, and June 30, 2005, [***8] it rescinded 207 for misrepresentation.

Blue Shield Life argued that the class lacked the community-of-interest element required for certification. There existed no predominant question of law or fact that would make relief on a classwide basis appropriate, it argued. Blue Shield Life explained that the class that plaintiff sought to certify is of people who have had their policies rescinded because the insured [**791] "defrauded" Blue Shield Life or otherwise misrepresented his or her health status when applying for coverage. Blue Shield Life argued that such a class is not easily ascertainable because it is comprised of people having varying degrees of unclean hands. Moreover, the company argued, some members of the putative class may have been injured by Blue Shield Life's rescission whereas others may not have any claim of damage necessitating individual examination of the relative balance of equities in each case to determine whether equitable relief under the UCL would be appropriate. Finally, Blue Shield Life argued that plaintiff was neither a typical class member nor an adequate representative.

In connection with its opposition, Blue Shield Life listed examples from individual cases [***9] in which it had rescinded policies, purportedly not to demonstrate the merits of its rescission decision but to demonstrate the range of individual issues that would arise in resolving the UCL claim for each class member.

The trial court denied plaintiff's class certification motion. It ruled that the remedy each class member sought, i.e., voiding the rescission of their insurance policies, was of no benefit to each class member without a separate trial on the merits as to each plaintiff because each individual's case would turn on its own unique circumstances. The court explained, equity under Business and Professions Code section 17200 necessitates litigating individual issues of fraud and unclean hands before policies could be reinstated. Hence, common questions of fact did not predominate. Plaintiff's timely appeal followed.

DISCUSSION

1. *Standard of review*

[HN4](2) "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or [*716] when the parties are numerous, and it is impracticable to bring them all before the court ... .' The party seeking certification has the burden to establish the existence of both an ascertainable [***10] class and a well-defined community of interest among class members. [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal. Rptr. 3d 906, 96 P.3d 194].)

"The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' [Citation.] 'The community of interest requirement [for class certification] embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.] Plaintiffs [have the] burden to establish the requisite community of interest and that 'the proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members.' [Citation.]" (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal. Rptr. 2d 1, 63 P.3d 913].)

" 'The ultimate question in every case of this type is whether ... the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the [***11] judicial process and to the litigants.' [Citations.]" (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at pp. 1104-1105; accord, *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.)

[**792] [HN5]"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. The denial of certification to an entire class is an appealable order [citations], but in the absence of other error, a trial court

ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436 [97 Cal. Rptr. 2d 179, 2 P.3d 27], citing *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal. Rptr. 515, 629 P.2d 23]; [***12] accord, *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 325-326.) [*717]

Here, the trial court gave one chief reason for its ruling. The court observed that Blue Shield Life's defenses of fraud and unclean hands raised individual factual issues such that adjudication on a class wide basis would not be beneficial. Plaintiff contends that the trial court relied on an erroneous legal assumption about whether unclean hands constituted a defense to the particular UCL claim presented here.

2. *The trial court made erroneous legal assumptions when it denied plaintiff's class certification motion*

a. *The UCL*

[HN6](3) "Unfair competition" under the UCL means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [section 17500, the false advertising law]." (Bus. & Prof. Code, § 17200.) [HN7](4) "The UCL's scope is broad. By defining unfair competition to include any '*unlawful* ... business act or practice' [citation], the UCL permits violations of other laws to be treated as unfair competition that is independently actionable. [Citation.]" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949 [119 Cal. Rptr. 2d 296, 45 P.3d 243].)

"An 'unlawful' business [***13] activity includes ' "*anything* that can properly be called a business practice and that at the same time is forbidden by law." [Citation.]' [Citation.] Virtually any law--federal, state or local--can serve as a predicate for an action under Business and Professions Code section 17200. [Citation.]" (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 717-718 [113 Cal. Rptr. 2d 399].)

[HN8](5) " 'The "unfair" standard, the second prong of [Business and Professions Code] section 17200, also provides an independent basis for relief. This standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. [Citation.] The test of whether a business practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim ... . [Citations.]" [Citation.] ... [A]n "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, [**793] oppressive, unscrupulous or substantially [***14] injurious to consumers." [Citation.]' [Citation.]" (*Smith v. State Farm Mutual Automobile Ins. Co., supra*, 93 Cal.App.4th at pp. 718-719.)

b. *The Insurance Code*

The unlawful conduct alleged here is postclaims underwriting by rescinding disability insurance policies based on alleged misrepresentations in the [*718] applications, which applications were incorporated by reference to, but neither endorsed on nor attached to, insureds' applications, all in violation of sections 10113 and 10381.5.

[HN9](6) Postclaims underwriting of disability, i.e., health, insurance (§ 106) [7] is flatly prohibited by section 10384. [8] "Particularly with low limits policies, insurers may choose not to incur the expense of investigating every application received before issuing the policy. Instead, subject to the policy's 'incontestability' clause ... , insurers may wait until a claim arises to check the accuracy of the insured's declarations and application. ... This is often referred to as 'postclaim underwriting.' ... [¶] ... *No insurer issuing or providing disability insurance covering hospital, medical or surgical expenses may engage in 'postclaim underwriting.'* " (Croskey et al., Cal. Practice Guide: Insurance Litigation (The [***15] Rutter Group 2006) ¶¶ 12:964 to 12:965, p. 12C-45, italics added.)

> 7    [HN10]Section 106, subdivision (a) defines disability insurance as, inter alia, "insurance appertaining to injury, disablement or death resulting to the insured from accidents, and appertaining to disablements resulting to the insured from sickness."
>
> 8    In its entirety, section 10384 states: [HN11]"No insurer issuing or providing any policy of disability insurance covering hospital, medical, or surgical expenses shall engage in the practice of postclaims underwriting. For purposes of this section, 'postclaims underwriting' means the rescinding, canceling, or limiting of a policy or certificate due to the insurer's failure to com-

plete medical underwriting and resolve all reasonable questions arising from written information submitted on or with an application before issuing the policy or certificate."

(7) As noted, [HN12]section 10113 prohibits incorporating applications into a disability insurance policy by reference unless they are endorsed upon or attached to the policies when issued. (See fn. 3, *ante*.) [9] If a copy of an application for a policy is not attached to or endorsed on the policy when the policy is issued, then the insured is not bound by statements [\*\*\*16] made in that application. (§ 10381.5.)

> 9 The parties argue at length about whether Blue Shield Life's conduct of referring to applications without attaching them to or endorsing them into the policy when issued complies with section 10113. Blue Shield Life argues about the definitions of "attached" and "indorsed" in an effort to avoid section 10113's specific proscription against the incorporation by reference of policy applications. Plaintiff cites us to California and out-of-state authority referring to model legislation drafted by the National Association of Insurance Commissioners. An endorsement is "a rider upon a separate piece of paper made a part of such policy." (§ 10274.) A "rider" is an "attachment to an insurance policy that modifies the conditions of the policy ... ." (Black's Law Dict. (6th ed. 1990) p. 1323, col. 2.) However, whether Blue Shield Life's conduct complies with this statute goes to the merits of plaintiff's lawsuit and as such is not a matter for consideration in this appeal. We are interested only in whether the trial court erred in denying class certification and not in whether the lawsuit is legally or factually meritorious. (*Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at p. 1104.) [\*\*\*17]

Sections 10113, 10381.5, and 10384 are not solely statements of insurance policy *interpretation* as Blue Shield Life would have it. The practice of [\*719] postclaims underwriting is categorically prohibited. (§ 10384; accord, Croskey et al., *supra*, ¶¶ 12:964 to 12:965, p. 12C-45, italics added.) [\*\*794] And section 10381.5 is part of "the law *regulating and prescribing the standard provisions required to be included in disability policies*" in addition to "the interpretation of such policies." (Summary from Dept. of Justice to Governor (May 14, 1951) regarding Assem. Bill No. 524 (1951 Reg. Sess.), Stats. 1951, ch. 570, § 16, p. 1734, italics added.) Section 10381.5 was designed to "repeat[] a provision of section 10113 ... ." (Summary from Dept. of Justice, *supra*, regarding Assem. Bill No. 524) and separately establishes a consequence for the violation of section 10113. Accordingly, "unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof," the insured "*shall not be bound by any statement made in an application* for a policy." (§ 10381.5, italics added.)

[HN13](8) Another consequence of violating sections 10113 and 10381.5 is that the insurer may not invoke *the defense* of misrepresentations in or omissions from the unattached and unendorsed [\*\*\*18] application. [10] (*Telford v. New York Life Ins. Co.* (1937) 9 Cal.2d 103, 106 [69 P.2d 835].) In *Telford*, the defendant insurer had voided the plaintiff's wife's insurance policy on the ground the wife had made misrepresentations in her application for insurance and concealed information about her medical condition. (*Id.* at p. 104.) Acknowledging that false representations or concealments of material fact vitiate the [\*720] policy (*id.* at p. 105), the Supreme Court nonetheless held that the insured was not bound by certain of her statements contained in that portion of the application that *had not been attached to the policy*: "The written statement in that respect *was not included in that portion of the application which was attached to the policy*, and failure to make a full disclosure concerning the treatments and observation may not *therefore afford a basis for a defense by the defendant*." (*Id.* at p. 106, italics added.) [1](9) Therefore, [HN14] [\*\*795] because it contravenes sections 10113, 10381.5, and 10384, the following conduct is clearly unlawful: failing to attach applications to or endorse them on disability policies when issued and later engaging in postclaims underwriting by holding insureds to statements in those [\*\*\*19] unattached and unendorsed applications as grounds for voiding the policies. Such unlawful conduct serves as a predicate unlawful practice to a UCL cause of action.

> 10 Blue Shield Life cites us to *Standard Ins. Co. v. Carls* (N.D.Cal., June 9, 2000, No. C-99-4010-VRW) 2000 U.S. Dist. Lexis 8401 in support of its contention that the application is admissible even if not attached to or endorsed on the policy. Blue Shield Life also cites *Carls* for the definition of "endorsed on." While Blue Shield Life is correct that it may cite unpublished federal opinions if they are available by computer, such authority is not binding. (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5 [1 Cal. Rptr. 3d 312]; see U.S. Cir. Ct. Rules (9th Cir.), rule 36-3(a) [unpublished dispositions of Ninth Circuit are nonbinding and not citable].) We do not find *Carls* persuasive, particularly because it stands in stark contrast to the ample published authority interpreting sections 10113 and 10381.5, and from many other states with similar provisions. (See

*Wilson v. Western National Life Ins. Co.* (1991) 235 Cal. App. 3d 981, 990 [1 Cal. Rptr. 2d 157] [proposition that application must be attached to the policy for a company [***20] to rely on any provision in application "is not only true, but codified in section 10113"]; *Gibraltar Cas. Co. v. A. Epstein & Sons* (1990) 206 Ill. App. 3d 272, 277 [150 Ill. Dec. 236, 562 N.E.2d 1039] [insurer barred from claiming insured's misrepresentations precluded coverage where application was not " 'attached to' " the policy and policy contained no specific, unambiguous statement indicating misrepresentation as required under Illinois statute]; *Brock v. State Farm Mutual Auto. Ins. Co.* (2004) 195 Ore.App. 519, 527-532 [98 P.3d 759] [defining "endorsed on" and holding where insured's misrepresentations in policy application were not " 'indorsed upon' " or attached to policy as required by Oregon and model statutes, defendant insurer could not deny recovery based on misrepresentations in application]; *Parks v. Saint Lawrence Life Association* (1930) 138 Misc. 435 [246 N.Y.S. 689, 691] [insured's misrepresentation in application no defense to coverage where application was not endorsed on or attached to policy. It was insufficient to state that policy was issued in consideration of statements contained in application because such incorporation by reference is contrary to express language in New York statute.].)

11  Blue Shield Life's reliance on [***21] *Ashley v. American Mutual Liability Insurance Co.* (N.D.Cal. 1958) 167 F. Supp. 125 is unavailing. That case did not involve disability insurance and so, as the District Court observed, section 10381.5 did not apply. The case does not stand for propositions it did not decide. (See *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 147 [40 Cal. Rptr. 2d 839, 893 P.2d 1160] ["Judicial decisions are of course authority for what they actually decide; we do not readjust their holdings to incorporate claims not asserted or considered therein."].) Nor are *Shepard v. CalFarm Life Ins. Co.* (1992) 5 Cal.App.4th 1067 [7 Cal. Rptr. 2d 428] and *Wernecke v. Pacific Fidelity Life Ins. Co.* (1965) 238 Cal. App. 2d 884 [48 Cal. Rptr. 251] inconsistent with plaintiff's interpretation of sections 10113 and 10381.5.

Given that sections 10113, 10381.5, and 10384 provide consequences for their violation, Blue Shield Life's reliance on *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284 [22 Cal. Rptr. 2d 20], to argue that sections 10381.5 and 10113 are regulatory in nature and do not provide a basis for a UCL action because they do not proscribe any conduct is unavailing. *Samura* involved certain regulatory provisions of the Knox-Keene Act (Health & Saf. Code, §§ 1242, 1363, 1367) that do [***22] not define an unlawful act that could be enjoined as unfair competition under the UCL relevant to that case. (*Samura, supra*, at p. 1300.) The regulatory power defined in the sections of the Knox-Keene Act at issue in *Samura* was entrusted exclusively to the Department of Corporations, preempting the common law powers of the Attorney General. (17 Cal.App.4th at p. 1299.)[12]

12  *Samura* did not purport to hold that the Department of Managed Health Care had exclusive jurisdiction to enforce every section of the Knox-Keene Act. Rather, that Act limits a private party's suit for injunctive relief to "acts which are made unlawful by the Knox-Keene Act." (*Samura v. Kaiser Foundation Health Plan, Inc., supra*, 17 Cal.App.4th at p. 1299.) In any event, we reject any suggestion that a private party cannot sue to enforce underlying laws when those laws provide for enforcement by a public officer. (See *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 606 [89 Cal. Rptr. 2d 370]; *Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488 [99 Cal. Rptr. 2d 721]; see also Stern, Bus. & Prof.C., § 17200 Practice (The Rutter Group 2007) ¶¶ 7:8 to 7:10, pp. 7-3 to 7-4.) Our Supreme Court has made clear that "a private plaintiff may bring a UCL action [***23] even when 'the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.' [Citation.]" (*Kasky v. Nike, Inc., supra*, 27 Cal.4th at p. 950.)

[*721]

Here, by comparison, as explained, section 10384 explicitly makes postclaims underwriting unlawful and thus provides a basis for an injunction under the UCL. (*Samura v. Kaiser Foundation Health Plan, Inc., supra*, 17 Cal.App.4th at pp. 1299-1300.) Furthermore, failing to comply with section 10113, as explained, has important consequences for the violator: Not only is the waiver of the prohibition against attachment by reference void (§ 10113), but the insurer who omits to attach the application to or endorse it on the policy when issued may not bind the insured to "any statement[s] made in [that] application." (§ 10381.5.)

c. *Common issues of law and fact dominate plaintiff's liability claims*

Plaintiff's complaint alleges that Blue Shield Life has been binding insureds [**796] to the statements

they made in their applications as justification for rescinding those policies after claims were filed based on alleged misrepresentations, even when Blue Shield Life had neither attached [***24] the application to, nor endorsed it on, the policies when issued. Such conduct, if true, blatantly violates the Insurance Code. If true, this conduct is also, it seems to us, an unfair business practice. Plaintiff has pled a violation of an act that is unlawful and can be enjoined under Business and Professions Code section 17200.

To summarize, plaintiff has defined the class to include "[1] All California residents [2] who were issued a policy of health insurance by Blue Shield Life [that is not governed by ERISA] ... and [3] who thereafter had the policy rescinded by Blue Shield Life since March 28, 2001, based upon alleged misrepresentations contained in the policy application." The factual and legal issues that go to liability are universal to all class members, with the result that common issues of law and fact would predominate.

d. *The defenses of fraud and unclean hands are not available in this UCL cause of action, with the result that individual issues of law and fact concerning Blue Shield Life's defenses would not outweigh the common issues of liability*

(10) Turning to the rationale for denying plaintiff's class certification motion, as explained, the trial court found that legal [***25] and factual issues concerning the defenses of fraud and unclean hands outweighed those related to liability rendering class treatment disadvantageous. However, the equitable defense of unclean hands is not available in this UCL action based on violation of statutes, namely, sections 10113, 10381.5, and 10384. Courts have long held that [HN15]the equitable defense of unclean hands is not a defense to [*722] an unfair trade or business practices claim based on violation of a statute. To allow such a defense would be to judicially sanction the defendant for engaging in an act declared by statute to be void or against public policy. (See *Kofsky v. Smart & Final Iris Co.* (1955) 131 Cal. App. 2d 530, 532 [281 P.2d 5] [holding unclean hands defense not available in an unfair practices act violation under Bus. & Prof. Code, § 17000 et seq.].) It has long been the law that "[t]he equitable doctrine of the refusal of aid to anyone with 'unclean hands,' does not, as such, apply to actions under [the unfair practices act]." (*Page v. Bakersfield Uniform etc. Co.* (1966) 239 Cal. App. 2d 762, 770 [49 Cal. Rptr. 46].) (11) *Kofsky* points out that [HN16]the doctrine of refusing to aid a party with unclean hands has no application where, as here "the failure [***26] to restrain an act because the parties are *in pari delicto* would result in permitting an act declared by statute to be void or against public policy. [Citations.]" (*Kofsky, supra*, at p. 532; see also Stern, Bus. & Prof.C., § 17200 Practice, *supra*, ¶ 5:302, pp. 5-87 to 5-88; cf. *Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 446 [153 Cal. Rptr. 28, 591 P.2d 51] [holding court may order defendant bank to disgorge gains obtained from fraudulent business practice, even without individualized proof of deception to prevent bank from retaining benefits of its wrong and being insulated from any damages].)

(12) More recently, our Supreme Court explained that [HN17]"equitable defenses may not be asserted to wholly defeat a UCL claim [under Business and Professions Code, section 17200] since such claims arise out of unlawful conduct. ..." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179 [96 Cal. Rptr. 2d 518, 999 P.2d 706].) In *Cortez*, the plaintiff brought an action under the UCL seeking restitution of overtime [**797] wages withheld from her and other employees. The defendant argued that where the UCL sounded in equity, the trial court was obligated to consider equitable defenses. The Supreme Court held that the equities may be considered when the [***27] trial court exercises its discretion to fashion a *remedy* under Business and Professions Code section 17203. (23 Cal.4th at p. 179.) But, equitable defenses *may not be used to defeat the cause of action under the UCL*. As more fully explained by Justice Werdegar in her concurrence in *Cortez*, "in general, as between a person who is enriched as the result of his or her violation of the law, and a person intended to be protected by the law who is harmed by its violation, for the violator to retain the benefit would be unjust." (*Cortez, supra*, at p. 182 (conc. opn. of Werdegar, J.).)

Accordingly, Blue Shield Life should not be entitled to raise the equitable defense of unclean hands to defeat the UCL cause of action here. To allow Blue Shield Life to argue as a defense to the UCL claim of postclaims underwriting that putative class plaintiffs have unclean hands because they [*723] misrepresented material medical information on unattached and unendorsed insurance applications, would be to sanction Blue Shield Life's unlawful and unfair conduct. (*Cortez v. Purolator Air Filtration Products Co., supra*, 23 Cal.4th at p. 182 (conc. opn. of Werdegar, J.); *Page v. Bakersfield Uniform etc. Co., supra*, 239 Cal. App. 2d at p. 770; [***28] *Kofsky v. Smart & Final Iris Co., supra*, 131 Cal. App. 2d at p. 532.) Of course, the trial court has the discretion to consider equitable defenses such as unclean hands in creating the *remedies* authorized by Business and Professions Code section 17203. (*Cortez, supra*, at p. 179.) Such defenses may not be used, however, to wholly defeat the UCL cause of action. (*Cortez, supra*, at p. 179.)

Nor is fraud available as a defense to defeat plaintiff's cause of action. Insofar as Blue Shield Life failed to attach its insureds' applications to or endorse them on the

policies, those insureds are "not ... bound by any statement[s] made in [those] application[s]" (§ 10381.5) and "[a]ny waiver of the provisions of this section [would] be void" (§ 10113). To raise unclean hands and fraud based on statements in the application to defeat this UCL claim, Blue Shield Life would need to hold insureds to those statements. Yet, not only would that violate section 10113's antiwaiver provision and the very sanction that section 10381.5 provides for failure to attach or endorse the applications to the policy, but Blue Shield Life necessarily would have to rely on a defense that is specifically denied insurance companies by the Supreme [***29] Court. (*Telford v. New York Life Ins. Co., supra*, 9 Cal.2d at p. 106.)

Blue Shield Life's reliance on *Brasure v. Optimum Choice Ins. Co.* (D. Del. 1999) 37 F. Supp. 2d 340 is unavailing. *Brasure* is based on the Delaware Code which specifically makes an insurance application *inadmissible* in court if that application was not attached to or made part of the policy. (*Id.* at p. 344.) *Brasure* held that the insured's "risk assessment form" was not admissible in evidence and the insurer could not use the misstatements and omissions in that form to deny coverage to the insured. (*Ibid.*) Nonetheless, *judicial admissions* to the effect that the insured made misstatements on the "risk assessment form" were admissible. (*Id.* at p. 345.) *Brasure* is not controlling here because unlike the Delaware statute, according to *Telford*, California precludes the insurer from relying on the application *as a defense*. (§§ 10113, 10381.5.) [**798] Also, Blue Shield Life overstates its case when it contends, based on *Brasure* and section 332, [13] that the alleged statutory violations here cannot "bar[] *all* fraud-based defenses ... ." (Italics added.) As explained, the insurer who violates these statutes is not left without [***30] any [*724] defenses; the court may consider the insured's nondisclosure or misrepresentations in fashioning the equitable remedies authorized by Business and Professions Code section 17203. (*Cortez v. Purolator Air Filtration Products Co., supra*, 23 Cal.4th at p. 179.)

> 13 Section 332 states: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

(13) Turning to plaintiff's class certification motion, the trial court ruled that individual factual issues of fraud and unclean hands would predominate, with the result that class treatment would not be beneficial. But where equitable defenses may not be used to wholly defeat the UCL cause of action (*Cortez v. Purolator Air Filtration Products Co., supra*, 23 Cal.4th at p. 179), and where the insurer may not raise a defense based on misstatements made in unattached and unendorsed applications (*Telford v. New York Life Ins. Co., supra*, 9 Cal.2d at p. 106), the diverse facts making up Blue Shield Life's fraud and unclean hands defenses are not [***31] to be factored in when determining whether the community of interest requirement is met. That is, [HN18]where they are not to be considered, legal and factual issues that go to these *defenses* simply cannot outweigh the common issues related to *liability*. In short, the trial court relied on erroneous legal assumptions when it weighed the legal and factual issues of fraud and unclean hands in deciding to deny plaintiff's motion for class certification. (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at pp. 435-436.)

(14) We disagree with Blue Shield Life that equitable considerations at the remedy stage involve individual issues precluding class treatment of liability. [HN19]"In the absence of California authority, California courts may look to the Federal Rules of Civil Procedure (FRCP) and to the federal cases interpreting them [citation]." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ 14:11.20, p. 14-9.) (15) As explained by an authority on federal class actions, [HN20]"Individual issues will often be present in a class action, especially in connection with individual defenses against class plaintiffs, rights of individual class members to recover in the event a violation [***32] is established, and the type or amount of relief individual class members may be entitled to receive. Nevertheless, *it is settled that the common issues need not be dispositive of the litigation*. The fact that class members must individually demonstrate their right to recover, or that they may suffer varying degrees of injury, will not bar a class action; *nor is a class action precluded by the presence of individual defenses against class plaintiffs*. [¶] *Moreover, a court has the discretion to limit a class suit to liability issues only, or to select[] common claims and defenses*. ..." (1 Conte & Newberg, Newberg on Class Actions (4th ed. 2002) § 3:12, pp. 315-316, italics added, fns. omitted; see also *Gerdom v. Continental Airlines, Inc.* (9th Cir. 1981) 648 F.2d 1223, 1228, vacated in part in 692 F.2d 602, cert. dism. *sub nom. Continental Air Lines, Inc. v. Gerdom* (1983) [*725] 460 U.S. 1074 [75 L. Ed. 2d 954, 103 S. Ct. 1534] [**799] [commonality requirement not defeated by fact that members had differing injuries].)

Finally, Blue Shield Life argues that class treatment would not be beneficial because the injunction plaintiff seeks is to force Blue Shield Life to reinstate those policies it rescinded. Blue Shield Life argues that injunctions [***33] requiring specific performance of a contract, or a series of acts necessitating court supervision are frowned upon. (See *Ellison v. Ventura Port District* (1978) 80

Cal. App. 3d 574, 580 [145 Cal. Rptr. 665] [analyzing rule and declining to apply rule to prevent specific performance of dredging contract because court supervision not difficult].) However, plaintiff's complaint, fairly read, seeks to establish that Blue Shield Life may not rescind a policy based on applications that are not attached to or endorsed on the policy when issued. It also seeks reinstatement of improperly rescinded policies. Accordingly, plaintiff seeks declaratory relief as well as an injunction to stop Blue Shield Life's conduct of postclaims underwriting based on statements made in unattached and unendorsed applications. Plaintiff has not requested continuing court supervision.

On remand, the trial court should reconsider the factual and legal issues relating to liability and class definition under the UCL in light of our holding here.

3. *The trial court must consider whether plaintiff's claims are typical and whether he may adequately represent the class*

Blue Shield Life argues that certification is inappropriate because plaintiff [***34] is not an adequate representative of the class where Blue Shield Life reinstated plaintiff's insurance coverage and "paid all of [his] *outstanding* medical bills." The trial court never reached these factors.

[HN21](16) When determining whether plaintiff's claims are typical of those of the class, and whether plaintiff can fairly and adequately represent the class (*Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th at p. 1105), the trial court on remand may take into account whether plaintiff here has already obtained his individual benefits from the action. (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871-872 [97 Cal. Rptr. 849, 489 P.2d 1113].) "[P]laintiffs who have nothing at stake often will not devote sufficient energy to the prosecution of the action; further, the receipt of benefits by the named plaintiffs may sometimes create a conflict of interest between the class and its would-be representatives." (*Id.* at p. 872.) By contrast, "the court may find that the named plaintiff[] will continue fairly to represent the class, and, therefore, permit [him] to continue the class litigation." (*Ibid.*) [*726]

Of particular relevance here, the record indicates that Blue Shield Life reinstated plaintiff's policy and paid [***35] only the outstanding medical bills. Hence, on remand, the trial court must determine whether plaintiff continues to be damaged. Furthermore, the UCL allows equitable remedies only. Even if Blue Shield Life paid some of plaintiff's damages, plaintiff may still adequately represent the class in seeking equitable remedies, such as declaratory, [14] injunctive, and restitutionary relief.

  14 Blue Shield Life's contention to the contrary, plaintiff does seek declaratory relief. He necessarily relies on the court's equitable powers in fashioning a remedy here, and prayed "[f]or such further relief as the Court finds to be just and proper."

(17) Moreover, [HN22]"[a] prospective defendant is not allowed to avert a class action [**800] by 'picking off' prospective plaintiffs one-by-one. Thus, precertification payment of the named plaintiff's claim does not automatically disqualify the named plaintiff as a class action representative." (Weil & Brown, Cal. Practice Guide, *supra*, Civil Procedure Before Trial, ¶ 14:41, p. 14-28, citing *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 590-596 [200 Cal. Rptr. 38, 676 P.2d 1060].) The indications are that plaintiff had standing when he filed this lawsuit but was paid some money thereafter. "Even [***36] if the named plaintiff receives all the benefits that he seeks in the complaint, such success does not divest him of the duty to continue the action for the benefit of others similarly situated." (*La Sala v. American Sav. & Loan Assn., supra*, 5 Cal.3d at p. 871.) We observe that plaintiff has declared "his desire to continue with this case[] ... after being publicly called a fraud by Blue Shield Life."

"If, however, the court concludes that the named plaintiff[] can no longer suitably represent the class, it should at least afford plaintiff[] the opportunity to amend the[] complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative. [Citations.] If, after the court has thus extended an opportunity to amend, the class still lacks a suitable representative, the court may conclude that it must dismiss the action. At this point, the further issue arises whether the court must notify the class of the proposed dismissal." (*La Sala v. American Sav. & Loan Assn., supra*, 5 Cal.3d at p. 872.) All of these issues must be considered by the trial court on remand. [15]

  15 As the result of our conclusion, we need not reach plaintiff's [***37] contention that the trial court abused its discretion in denying his request to delay its ruling on class certification until after his hearing on his motion to compel production of files of putative class members.

[*727]

DISPOSITION

The order is reversed with directions to the trial court in accordance with the opinions expressed herein. Appellants to recover costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.