Scott Edward Cole, Esq. (S.B. #160744)
Matthew R. Bainer, Esq. (S.B. #220972)
Carrie Lin, Esq. (S.B. #241849)
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, California 94612
Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
www.scalaw.com

Attorneys for Representative Plaintiff
and the Plaintiff Class

## UNITED STATES DISTRICT COURT

## NORTHEN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SYLVIA JOHNSON, individually, and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>vs.<br><br>AMERIPRISE FINANCIAL SERVICES, INC.<br><br>                              Defendant, | **Case No.:C07-3168 JL**<br><br>**<u>CLASS</u> ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT AMERIPRISE FINANCIAL SERVICES, INC.'S MOTION FOR ORDER REGARDING DISCOVERY PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23(d) AND 26(c)**<br><br>Date:          March 12, 2008<br>Time:         9:30 a.m.<br>Courtroom: 3<br>Judge:        Hon. James Larson |

### I.      INTRODUCTION

This Court should see Defendant's Motion for what it is: an unjustified attempt by Ameriprise Financial Services, Inc. (hereinafter "Ameriprise" and/or "Defendant") to prevent Plaintiff from communicating with putative class members, percipient witnesses and generally conducting discovery into the merits of her class claims. This Motion is also Defendant's first attempt to cast a shadow over the "adequacy" of Plaintiff's Counsel, in anticipation of Plaintiff's anticipated Motion for Class Certification. Regardless of the motives, Defendant failed to show that Plaintiff's counsel has engaged in *any* improper or misleading communications with putative class

members and witnesses,[1] yet requests discovery "remedies" for these allegedly improper communications that have been squarely condemned by other courts as overreaching and constitutionally-questionable prior restraints on speech.[2] Defendant's requested "remedies" similarly run afoul of the attorney-client privilege, the work-product doctrine,[3] and public policy considerations protecting employee witnesses from retaliation.[4]

For the reasons set forth more fully below, Plaintiff respectfully requests that this Court deny Ameriprise's Motion in its entirety.

## II.   STATEMENT OF FACTS

Plaintiff and Class Representative Sylvia Johnson filed the underlying class complaint on May 17, 2007 against defendant Ameriprise Financial Services, Inc. Ms. Johnson alleged that Ameriprise mis-classified its California "P-2 Financial Advisors" as franchisees rather than employees, thereby denying them wages for all hours worked (including overtime wages). Ms. Johnson's Complaint further alleges violations of California Business & Professions Code §§ 17200, *et seq.*, and requests injunctive and equitable relief on that basis.[5]

In various meet and confer letters, and in its own proposed amended Answer, Ameriprise repeatedly suggested to Plaintiff's counsel that its P-1 Employee Advisors and P-2 Independent Advisors perform similar work functions and duties.[6] The discovery exchanged by the parties

---

[1]   Indeed, the Newsletter merely informs putative class members and potential employee witnesses of the existence of the pending lawsuit, and their rights thereunder.

[2]   *Maggi v. Superior Court*, 119 Cal.App.4th 1218 (2004).

[3]   Forced disclosure of the names of current and former employees of defendant-employer who volunteered information to opposing counsel constitutes an unwarranted invasion of attorney work-product. *In Re Ashworth*, 213 F.R.D. 385, 390 (S.D. Cal. 2002); *MTI Technology Corp. Securities Litigation II*, Not Reported in F.Supp.2d, 2002 WL 32344347 (C.D. Cal. 2002).

[4]   Where individuals are more akin to "informant[s] rather than...uninterested witnesses...there is a legitimate policy concern that militates against requiring disclosure." *Id*. at 389, citing *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972).

[5]   *Declaration of Carrie Lin* ("*Lin Decl.*"), Exhibit A.

[6]   *Lin Decl.*, Exhibit B and C

1  supports this view,[7] strongly indicating that Ameriprise's P-1 Financial Advisors, while not part of
2  the putative class, have information relevant to the propriety of Ameriprise's classification of P-2
3  Advisors as "franchisees."

4  On January 8, 2008, Plaintiff's counsel sent a Newsletter to Ameriprise's current and former
5  P-2 and P-1 Financial Advisors, apprising them of the nature of the underlying action, and informing
6  them of their right to speak with Plaintiff's counsel concerning the underlying allegations.[8] The
7  Newsletter clearly stated that P-1 Employee Advisors ***are not*** part of the putative class, but
8  nonetheless informed them of their right to contact Plaintiff's counsel regarding the underlying
9  action, *or* to seek a consultation regarding their legal rights. The Newsletter stated that an individual
10 seeking a consultation regarding his or her legal rights could do so on a confidential basis.

11 Shortly thereafter, counsel for Ameriprise contacted Plaintiff's counsel via letter.[9] The letter
12 accused Plaintiff of making "false representations" regarding an employee's right to refuse signing
13 a written statement with which he or she does not agree, of "falsely" stating her *opinion* that
14 Defendant is engaged in an illegal practice, and of "false promises" of confidentiality to the
15 Newsletter's recipients. In addition to the demands Ameriprise makes in its instant motion, Mr.
16 Magarian's January 22, 2008 letter demanded that Plaintiff's counsel refrain from further
17 communications with putative class members, and demanded that Plaintiff provide the names and
18 interview notes for all P-1s who contacted Plaintiff's counsel. Plaintiff's counsel refused, but assured
19 defense counsel that any documents received from witnesses relevant to the underlying action would
20 be disclosed to Ameriprise pursuant to FRCP 26. *See*, *Lin Decl.* ¶ 10.

21 The instant motion followed.

---

[7]   *Lin Decl.*¶ 6

[8]   *Lin Decl.*, *Exhibit D*.

[9]   *Lin Decl.*, *Exhibit E*

### III. LEGAL ARGUMENT

#### A. PLAINTIFF'S COUNSEL IS ENTITLED TO SPEAK WITH PUTATIVE CLASS MEMBERS AND PERCIPIENT WITNESSES AS A MATTER OF *RIGHT*

Class Representatives and their attorneys have both a duty and a right to communicate with other putative class members,[10] as these communications are often integral to a Plaintiff's ability to conduct the discovery to which she is entitled. *Id.* Restrictions upon this right provide the defendant with a distinct and unfair litigation advantage (*Id.*), especially in the case of a defendant-employer who, not only has regular access to the putative class, but wields economic power over them.

Equally undeniable is a party's right to communicate with, and conduct informal interviews of, potential witnesses.[11,12] Like the right to communicate with putative class members, Plaintiff's right to communicate with potential witnesses is not only vital to the preservation of constitutional free speech rights,[13] but is vital to ensure equal access to relevant discovery and information.

Given the above, Ameriprise bears a heavy burden in attempting to restrict Ms. Johnson's right to communicate with putative class members and witnesses. Defendant has failed to meet this burden.

---

[10] *Parris v. Superior Court*, 109 Cal.App.4th 285, 299 (2003); *Atari, Inc. v. Superior Court*, 166 Cal.App.3d 867 (1985); *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785 (1982).

[11] Parties to litigation have the right to conduct informal investigations, including, but not limited to, *ex parte* interviews with witnesses who *voluntarily and willingly provide information. Wharton v. Calderon*, 127 F.3d 1201, 1205-1207 (9th Cir. 1997). A defendant-employer may not interfere with the opposing party's right to obtain informal discovery from potential witnesses who may have allegedly "confidential" or "proprietary" information, where the potential witnesses are willing participants. *In Re JDS Uniphase Corporation Securities Litigation*, 238 F.Supp.2d 1127, 1133 (N.D. Cal. 2002).

[12] Defendant implicitly acknowledges as much, having dodged the issue of whether it claims P-1s to be "managing agents" represented by Ameriprise. *See*, *Lin Decl.*, *Exhibit F* [January 24, 2008 email from Edward Magarian].

[13] *U.S. Const., 1st Amend.*; *Cal. Const., art. I, § 2, subd. (a).*; *Daily v. Superior Court*, 112 Cal. 94, 97 (1896).

1  **B.   DEFENDANT HAS FAILED TO SHOW ENTITLEMENT TO *ANY* OF THE RELIEF REQUESTED**

**1.   The Court should reject Defendant's demand for a curative notice.**

Any Order limiting or modifying a party's right to class communications must be based on a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the [free speech] rights of the parties."[14] The mere "possibility" that the communication could result in some sort of abuse of the class action process is insufficient reason to impose any speech restrictions.[15] Thus, courts should only issue curative notices where the underlying communication contains false, misleading, or improper[16] material.[17]

In this instance, Defendant demands a curative notice by claiming that Plaintiff's counsel has misrepresented the existence of an attorney-client relationship with P-1 employee witnesses. In making this claim, Defendant completely ignores the actual text of the Newsletter it condemns. The relevant language reads:

> Our job is to keep you informed and make sure you understand your rights. In staying abreast of these developments, you should also know that **you have the right to communicate with our office on a confidential basis.** If you wish to have a consultation about your legal rights and you wish us to treat the conversation as a privileged communication, we will gladly do so. *Lin Decl.*, Exhibit D

The Newsletter clearly states that its recipients may elect to communicate confidentially if they wish *to have a consultation about their legal rights*. As Defendant notes in its moving papers, this language practically recites *verbatim* the *definition* of what constitutes attorney-client privileged

---

[14]   *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).

[15]   *Payne v. Goodyear Tire & Rubber Co.*, 207 F.R.D. 16 (D. Mass 2002).

[16]   A communication that would have the effect of "interfering with the proper administration of a class action," may be improper and warrant a curative notice. *Wang v. Chinese Daily News*, 236 F.R.D. 485 (C.D. Cal. 2006).

[17]   Examples of communications warranting court interference include: communications urging or directing putative class members not to contact opposing counsel, such that the communications constitute veiled threats of economic harm and employer retaliation; communications from a party in litigation that purport to be *court-issued* notices, and communications directly soliciting retention of different class counsel. *Wang, supra*, 236 F.R.D. 485; and *McKesson HBOC, Inc. v. Superior Court*, 115 Cal.App.4th 1229 (2004).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  communications.[18] It is therefore difficult to understand Defendant's contention that the Newsletter
2  misrepresents the applicability of the attorney-client privilege.

3  Next, Defendant argues that the Newsletter is improper and "false" because it does not
4  expressly warn P-1 Financial Advisors that any communications they may have with Plaintiff's
5  counsel as *witnesses*, rather than *clients*, will be automatically subject to disclosure to Defendant.
6  Plaintiff did not, and could not, issue this warning in her Newsletter for the simple reason that such
7  a statement *would be false*. Informal communications and interview notes between counsel and
8  potential witnesses are generally protected by the attorney work-product doctrine, and are not
9  subject to disclosure absent a showing of compelling need.[19] As P-1 Financial Advisors are
10 Defendant's *own current and former employees*, it is highly unlikely that Defendant can articulate
11 a compelling need for Plaintiff's counsel's interview notes with these individuals.[20]

12 Because Defendant cannot show how the Newsletter is false, misleading, or improper, and
13 because Defendant demands a curative notice that would in itself be misleading, the Court should
14 reject Defendant's demand.

### 2. Forced Disclosure of Employee Identities Would Invade the Work-Product Doctrine

18 Although the identities of potential witnesses to an action are not normally considered work-
19 product, the protection applies where the witnesses names and contact information are already
20 known to the opposing party, *because the witnesses are the defendant-employer's own current and*
21 *former employees*.[21] In such a situation, forcing a plaintiff to specify those of defendant's own
22 employees who voluntarily contacted counsel to provide information helpful to plaintiff invades

---

[18] An individual may invoke the attorney-client privilege when he or she "'directly...consults a lawyer for the purpose...of securing legal advice or advice from him in his professional capacity.' Cal. Evid. Code § 951." *See*, *Defendant's Motion*, p. 6:21-23.

[19] *In Re Ashworth*, 213 F.R.D. 385, 390 (S.D. Cal. 2002); *MTI Technology Corp. Securities Litigation II*, Not Reported in F.Supp.2d, 2002 WL 32344347 (C.D. Cal. 2002)

[20] *Id.*

[21] *Id.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  work-product protected information,[22] and also undermines public policies aimed at protecting and
2  encouraging corporate whistle-blowers.[23]

3  Because Defendant cannot show a compelling need for disclosure of the identities of P-1s
4  and P-2s who have contacted Plaintiff's counsel, the Court should reject Defendant's demand as an
5  impermissible attempt to obtain attorney work-product.

### 3. Defendant may not prohibit Plaintiff from receiving documents that may support her class claims.

Finally, Defendant demands that this Court *prohibit* Plaintiff from *requesting* documents that may support her class-claims, if such documents are requested, or received, from anyone other than Defendant. Essentially, Defendant demands that this Court impose a constitutionally questionable gag order on Plaintiff's counsel, on the grounds that documents provided to Plaintiff's counsel at its request by any Ameriprise employee *may contain* confidential and/or proprietary information.

It is well-settled that "gag orders are not an appropriate method to protect confidential information from disclosure, no matter how damaging or private that information may be."[24] Prior restraints on speech in the context of discovery, both formal and informal, are only justified where "[t]he speech sought to be restrained *poses a clear and present danger* or serious and imminent threat to *a protected competing interest.*"[25] In this instance, the only valid protected competing interest is the *constitutional right to a fair trial.*[26]

Defendant's arguments fall woefully short of meeting the above-standard. They do not articulate any clear and present danger that confidential information will be disclosed; indeed, they

---

[22] Specifically, forced disclosure of the names of P-1s and putative class members would "necessarily reveal counsel's opinions regarding the relative importance of these witnesses," and would "link any future factual statements by the witnesses with [p]laintiff's counsel's legal theories and conclusions." *In Re Ashworth*, 213 F.R.D. 385, fn 6.

[23] *Id*. at 385, fn 6.

[24] *Maggi, supra*, 119 Cal.App.4th 1218, 1255; *see, also, Hurvitz v. Hoeffin*, 84 Cal.App.4th 1232, 1244 (2000).

[25] *Hurvitz*, 84 Cal.App.4th at 1241.

[26] *Id.* at 1241-1242.

1  fail even to reference, with any particularity, what documents allegedly contain confidential and/or
2  proprietary information. As such, Ameriprise has failed to meet its burden of demonstrating how the
3  potential disclosure of such information would compromise its constitutional right to a fair trial or
4  any other right.[27]

## IV.   CONCLUSION

Based upon the foregoing undisputed facts and well-settled law, Plaintiff respectfully submits that Defendant's Motion should be denied in its entirety and that Plaintiff be permitted to continue to freely communicate with members of the putative class and percipient witnesses.

Dated: February 20, 2008

**SCOTT COLE & ASSOCIATES, APC**

By:   /s/Carrie S. Lin, Esq.
      Carrie S. Lin, Esq.
      Attorneys for the Representative Plaintiff
      and the Plaintiff Class

---

[27]   Indeed, it cannot; the only possible way this issue would impact a party's right to a fair trial would be if this court *granted* Defendant's demand, thereby limiting Plaintiff's ability to procure and view documents relevant to her claims.