Karen E. Wentzel (SBN 112179)
DORSEY & WHITNEY LLP
1717 Embarcadero Road
Palo Alto, California 94303
(650) 857-1717 : phone
(650) 857-1288 : fax
Email: efilingPA@dorsey.com

Edward B. Magarian (admitted *pro hac vice*)
Zeb-Michael Curtin (admitted *pro hac vice*)
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402
(612) 340-2600 : phone
(612) 340-2777 : fax
Email: magarian.edward@dorsey.com
       curtin.zeb@dorsey.com

Attorneys for Defendant
AMERIPRISE FINANCIAL
SERVICES, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SYLVIA JOHNSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AMERIPRISE FINANCIAL SERVICES, INC.,<br><br>Defendants. | Case No. C 07-03168 PJH/JL<br><br>**DEFENDANT'S REPLY MEMO-RANDUM REGARDING MOTION FOR ORDER REGARDING DISCOVERY PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23(d) and 26(c)**<br><br>Date: Wednesday, March 12, 2008<br>Time: 9:30 a.m.<br>Judge: Hon. James Larson |

Ameriprise Financial had no choice but to file this motion. Plaintiff's counsel, through their conduct, could place at risk confidential client information protected by federal and state law; the careers of P1 Employee Advisors and P2 Independent Advisors; and Defendant Ameriprise Financial. The reason is simple. There are strict laws which protect client

information. Such information can be found in numerous Company documents. If advisors disclose this information to third parties (including Plaintiff's counsel), they will violate Ameriprise Financial's privacy policy, as well as federal and state law. The SEC will not care that the disclosure was made to a plaintiff's lawyer pursuing a civil wage-and-hour law claim, nor that the advisors were promised confidentiality by a private attorney. To protect the clients, the advisors, and Ameriprise Financial, and to be consistent with the law, Ameriprise Financial respectfully requests that this Court grant its motion.

## ARGUMENT

### A. Plaintiff's Counsel Should Not Be Permitted To Encourage Individuals To Disclose Confidential Information And/Or Documents In Contravention Of Their Legal Obligations.

Relying on inapposite cases, and a straw-man argument, Plaintiff asserts that Defendant seeks a "gag order" or "prior restraint" on her counsel's speech. Pl.'s Opp'n Mem. at 7.[1] Defendant's request for relief is far narrower, designed simply to protect not only its confidential and proprietary information, but that of its clients as well. To that end, Ameriprise Financial simply requests that Plaintiff's counsel not be allowed to collect any Ameriprise Financial documents directly from advisors, because those documents may contain client confidential information protected by law from disclosure to third parties like Plaintiff's counsel. Because this is an extremely sensitive issue in a highly regulated industry, Plaintiff must seek such documents within the confines of formal discovery, especially where, as here, they have circulated a Newsletter which is misleading. See infra at 4-5.

---

[1] The cases cited by Plaintiff are inapposite. First, in Maggi v. Superior Court, 119 Cal. App. 4th 1218 (2004), the appellate court found unconstitutional the lower court's order preventing *any* communications between the plaintiffs' counsel and third parties who likely possessed information without prior permission from the court. Id. at 1225. This was a classic "gag order" and prior restraint of speech, as it "restrict[ed] or preclude[d] a citizen from speaking *in advance*." Id. (quoting Hurvitz v. Hoefflin, 84 Cal. App. 4th 1232, 1241 (2000)). Second, the Hurvitz case likewise involved a court order prohibiting "'revealing, stating or in any manner releasing or publishing' any confidential information without prior court approval." 84 Cal. App. 4th at 1240. Here, on the other hand, Defendant does not seek an order limiting Plaintiff's speech with potential witnesses without prior court approval.

As noted in Defendant's motion, Plaintiff's counsel broadly seeks information from putative class members (P2 Independent Advisors) and non-class members (P1 Employee Advisors). The scope of the information requested is broad enough to include Ameriprise Financial confidential and proprietary business documents, as well as client confidential information. Plaintiff's counsel has provided no assurances that she has not sought or received such information.

Disclosure of Company confidential information would violate advisors' confidentiality agreements with Ameriprise Financial. See [P1] Financial Advisor's Agreement at 2, § IV (attached as Exhibit A to the Declaration of Zeb-Michael Curtin); [P2] Independent Advisor Business Franchise Agreement at 14, § 10 (attached as Exhibit B to the Curtin Declaration). Even more importantly, disclosure of client confidential information would violate Ameriprise Financial's privacy policy and the law.

First, Ameriprise Financial's privacy policy prohibits disclosure of client information to third parties except in limited circumstances, none of which are present here. See June 2007 Privacy Notice (attached as Exhibit A to the Declaration of Stephanie Rustad).

Second, the financial services industry is heavily regulated. Ameriprise Financial and its advisors are subject to numerous state and federal laws that prohibit the disclosure of client information to anyone outside of the Company. See, e.g., California Financial Information Privacy Act, Financial Code § 4050 et seq. (prohibiting Ameriprise Financial and other financial institutions from disclosing or sharing certain client personal information without a signed consent; and providing for significant penalties for violations); Graham-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. (likewise imposing obligation "to protect the security and confidentiality" of clients' personal information; Graham-Leach-Bliley is violated if there is a violation of the Company's privacy policy).

Were Plaintiff's counsel to solicit and collect information and/or documents containing client confidential information outside formal discovery, Defendant would be unable not only to conduct privilege and confidentiality review of its own confidential information and/or documents, but it would be left powerless to perform its duties under the law to protect its clients.

Plaintiff's counsel would not only put the advisors at risk with the SEC and the State of California, but would put Ameriprise Financial at risk as well. Plaintiff's counsel has not disavowed its intent to obtain such client confidential information notwithstanding these important legal issues.

Defendant's concerns are well-founded. Many Company documents contain client confidential information, including advisors' commission statements and other compliance paperwork at the heart of Plaintiff's allegations. See Rustad Decl. at ¶ 2. Defendant in fact has already invested significant time in isolating and redacting such irrelevant information in the documents it has produced thus far in this case. Defendant is not attempting to prohibit Plaintiff's counsel from speaking with putative class members or witnesses about what relevant facts they may possess. What Plaintiff's counsel cannot do, however, is gather confidential information and documents from advisors in violation of their confidentiality agreements, Ameriprise Financial's privacy policy, and federal and state law. Plaintiff should not be permitted to put Ameriprise Financial or its advisors in this position, especially when they can use formal discovery, pursuant to which Ameriprise Financial can assert proper objections and make sure the process follows the law.

### B.   The Requested Curative Notice Is Necessary To Protect Witnesses From Being Misled By Plaintiff's Guarantee Of Confidentiality.

Courts may issue curative notice to clarify potentially false or misleading statements. Pl.'s Opp'n Mem. at 5. Such curative notice is necessary here to prevent confusion of P1 Employee Advisors. Plaintiff's counsel acknowledge in their opposition memorandum and acknowledged in their Newsletter that P1 Employee Advisors are not putative class members, but may be witnesses. Id. at 3. However, they distributed the same Newsletter to both P1 Employee Advisors and P2 putative class members. With the above-described risks facing both these advisors and Ameriprise Financial, P1 Employee Advisors should not be left to guess whether portions of the Newsletter's language are addressed to them or only to putative class members.

Contrary to Plaintiff's attempt to reform and/or rewrite her counsel's solicitation Newsletter in her opposition memorandum, that Newsletter *did not* merely inform recipients that

they "may elect to communicate confidentiality if they wish *to have a consultation about their legal rights*." Pl.'s Opp'n Mem. at 5. Rather, it clearly, in bold, promised confidentiality to *all recipients*, not just those seeking legal advice: "Our job is to keep you informed and make sure you understand your rights. In staying abreast of these development, you should also know that **you have the right to communicate with our office on a confidential basis.** If you wish to have a consultation about your legal rights and you wish us to treat the conversation as a privileged communication, we will gladly do so." Id. (quoting Newsletter, emphasis in original). Plaintiff's attempt to reform the clear, misleading language of her letter in her opposition memorandum is insufficient and should be rejected. The P1 Employee Advisors have already received the Newsletter and been misled by it; they did not read Plaintiff's memorandum.

As described in Defendant's motion (see Def.'s Mot. at 6-8) and as addressed in the immediately following section, not every communication between a potential witness who received the Newsletter and Plaintiff's counsel can be kept confidential. Defendant's requested curative notice would not "limit" or "modify" Plaintiff's counsel's communications with *any* putative class members or potential witnesses. Rather, it would simply ensure those P1 Employee Advisors/potential witnesses are not lulled into a false sense of confidentiality. Such false promises of confidentiality are not fair to those individuals or Ameriprise Financial, and certainly are not appropriate in this or any other litigation. This Court should order written curative notice informing the P1 Employee Advisors who were sent the Newsletter that their conversations cannot be automatically kept confidential. Plaintiff's counsel also should be ordered to tell any P1 Employee Advisors who contact them that their conversations cannot automatically be kept confidential.

**C.    The Identities Of Witnesses Who Contact Plaintiff's Counsel In Response To Their Newsletter Are Not Protected Work Product.**

Plaintiff's counsel suggests their Newsletter is not misleading because any communications P1 Employee Advisors have with her counsel as potential witnesses, rather than clients, would be protected under the work-product doctrine. To support this argument, Plaintiff

claims that, "[a]lthough the identities of potential witnesses to an action are not normally considered work-product, the protection applies where the witnesses['] names and contact information are already known to the opposing party, *because the witnesses are the defendant-employer's own current and former employees*." Pl.'s Opp'n Mem. at 6 (emphasis in original). This broad formulation of the work-product doctrine is not supported by any of the cases she cites.

Moreover, although Plaintiff bears the burden to provide specific facts demonstrating her alleged work-product protection actually attaches, Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981), she offers only the blanket assertion quoted above. Neither this Court nor Defendant is required to accept Plaintiff's categorical invocation of work-product. Rather, she must articulate specific facts to allow Defendant to assess whether such assertions are valid.

Work-product protection is not absolute, and extends only to materials "that 'reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses, and inferences drawn from interviews.'" See In re Ashworth, Inc. Securities Litig., 213 F.R.D. 385, 387 (S.D. Cal. 2002) (quoting Hickman v. Taylor, 329 U.S. 495 (1947)). Plaintiff cites two securities-fraud class actions in which courts found that standard was met and protected from disclosure the identities of certain "informant" witnesses. However, these two cases can be easily distinguished from this case.

Both cases involved defendants seeking disclosure of the identities of specific individuals who plaintiffs' counsel sought out to interview as part of their pre-complaint investigation. This, the courts found, would have revealed trial strategy and also which witnesses the plaintiffs' counsel believed to be important. In Ashworth, the defendant sought to compel the plaintiffs to identify each former or current employee of the defendant who had provided information which formed the basis for any allegations of the complaint, and to further identify the specific paragraphs which contained information supplied by that individual. 213 F.R.D. at n. 1. Likewise, MTI Tech. Corp. Securities Litig., 2002 WL 32344347 (C.D. Cal. 2002), involved a similar situation in which a defendant sought the identities of 6 former employees anonymously referred to in the plaintiffs' complaint as having specific information. In that context, the court

found those identities to be protected by the work-product doctrine because to reveal them would allow opposing counsel to "infer which witnesses counsel considers important, revealing mental impressions and trial strategy." Id. at *3.

This case is different. Ameriprise Financial has simply requested Plaintiff to disclose the identities of all class members and non-class members who were mailed Plaintiff's Newsletter and/or who contacted Plaintiff's counsel in response to the Newsletter. Defendant's request does not seek the identities of "informant" witnesses who provided information used in drafting Plaintiff's complaint. Rather, Ameriprise Financial seeks information regarding the universe of Newsletter recipients and also individuals who contacted Plaintiff's counsel in response thereto, *not whom Plaintiff's counsel has specially targeted as potential witnesses*.[2] As to the latter, Plaintiff's counsel was merely the passive recipient of some phone calls or correspondence. Simply put, disclosure of these identities would not allow Defendant to "infer which witnesses [Plaintiff's] counsel considers important" or "reveal[] [Plaintiff's counsel's] mental impressions and trial strategy." Disclosing the simple fact an individual received a copy of the Newsletter and/or thereafter contacted Plaintiff's counsel will not affect Plaintiff's ability to prosecute this litigation.[3] Cf. In re Harmonic, Inc. Securities Litig., 245 F.R.D. 424 (N.D. Cal. 2007) (finding no work-product protection where defendant was not seeking attorney thoughts or impressions). It will, however, enable Defendant to determine whom to depose in this matter, whereas it would not be feasible for it to depose each of the hundreds of current or former P1 and P2 advisors in California who may have relevant information.

---

[2] The standard acknowledged by Plaintiff is whether disclosure of witness identities would "necessarily reveal counsel's opinions regarding the relative importance of these witnesses" and "link any future factual statements by the witnesses with plaintiff['s] counsel's legal theories and conclusions." Pl.'s Opp'n Mem. at 7 n. 22 (citing and quoting In re Ashworth, 213 F.R.D. at n.6).

[3] Defendant believes it possible, if not likely, that some of the individuals who contacted Plaintiff's counsel did so not to provide information helpful to Plaintiff's case, but to express dissatisfaction with the lawsuit. Plaintiff cannot seriously contend this somehow goes to her counsel's litigation strategy.

Accordingly, there is no work-product to protect, and Plaintiff's attempts at misdirection must be disregarded.

## CONCLUSION

For the foregoing reasons, in addition to the reasons stated in its motion, Defendant respectfully requests that this Court grant its Motion for Order Regarding Discovery Pursuant to Federal Rules of Civil Procedure 23(d) and 26(c).

Dated: February 27, 2008                DORSEY & WHITNEY LLP


By: s/ Zeb-Michael Curtin
ZEB-MICHAEL CURTIN
Attorneys for Defendant
AMERIPRISE FINANCIAL SERVICES, INC.