UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sylvia Johnson, et al., | No. C 07-3168 PJH (JL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AMERIPRISE'S MOTION REGARDING DISCOVERY PURSUANT TO RULES 23(d) AND 26(c).** |
| v. | |
| Ameriprise Financial, | |
| Defendants. | Docket # 36 |

## Introduction

Defendant Ameriprise Financial's motion for order regarding discovery pursuant to Federal Rules of Civil Procedure 23(d) and 26(c) came on for hearing. Scott Cole of Scott Cole & Associates appeared on behalf of Plaintiff Sylvia Johnson. Karen Wentzel of Dorsey & Whitney LLP appeared on behalf of Defendant Ameriprise Financial.

## Background

This is a wage and hours case brought on behalf of P2 Independent Advisors employed by Ameriprise. Plaintiff's counsel distributed a solicitation letter regarding this lawsuit ("Newsletter") to an undisclosed number of putative class members (P2 Independent Advisors / franchisees) and an undisclosed number of Ameriprise's P1 Employee Advisors who are not putative class members. The "Newsletter" implies that any communications from any recipients of that "Newsletter" will be kept confidential. It can also be read as soliciting information from Company employees, who are not putative class

1  members and without regard for the formal discovery process.  The information requested
2  is broad enough to include Ameriprise Financial's confidential and proprietary business
3  information and documents.  Ameriprise Financial has numerous categories of documents
4  and information that are confidential and proprietary.  Ameriprise Financial is in the financial
5  services industry, and subject to a multitude of state and federal laws that prohibit the
6  transfer of client information to anyone outside of the Company.

   There is a stipulated protective order between the parties governing confidential documents.

   Ameriprise asks that this Court grant its Motion and require: (1) that Plaintiff's counsel provide written curative notice to any P1 Employee Advisors who received their "Newsletter," informing them that their conversations with Plaintiff's counsel are not confidential, and that said employees should not provide to Plaintiff or her counsel company documents; (2) that Plaintiff's counsel expressly tell any P1 Employee Advisor who contacts them that their conversations with Plaintiff's counsel are not confidential and that said employees should not provide to Plaintiff or her counsel company documents; (3) that Plaintiff's counsel not seek to obtain or obtain Ameriprise Financial documents from any P1 Employee Advisors; (4) that Plaintiff's counsel produce a list of all individuals to whom they have distributed their "Newsletter" by any means and a list of all individuals who have contacted them in response to their "Newsletter"; (5) that Plaintiff's counsel produce all originals and copies of documents they have received to date (or receive hereafter) from any P1 Employee Advisors, and that Ameriprise be given the opportunity to review said documents for attorney-client privilege; and (6) that all documents obtained by Plaintiff's counsel from Ameriprise Financial employees be designated as confidential pursuant to the protective order.

**Legal Analysis**

The court's Rule 23(d) powers include the authority to enjoin communications with class members to protect them from undue interference. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).  However, such an order must be based "on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference

with the rights of the parties." *Id.* at 101. Any such order must also be "carefully drawn ⋯ [to] limit[ ] speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102. An injunction restricting communications must be "the narrowest possible relief which would protect the respective parties." *Id.* (quoting with approval *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir.1977)). *Cited in In re McKesson HBOC, Inc. Securities Litigation,* 126 F.Supp.2d 1239, 1242 (N.D.Cal. 2000).

In *Parks v. Eastwood Insurance Services*, 235 F.Supp.2d 1082 (C.D. Cal. 2002) a California federal court discussed pre-certification communications by a *defendant* in an FLSA class action. After the initial class notice was sent, but before class members had an opportunity to opt-in, the defendant employer sent an internal memo to its employees advising them to confer with corporate counsel. Plaintiffs moved to suppress the communication. Based on review of *Gulf Oil*, other federal authorities, and California decisions, the court held that the communication was permitted because the initial FLSA notice, before the receipt of opt-in notices, was not the same as a class certification. Therefore, the employer could still communicate with its potential class member employees. *Id.* at 1084. In discussing court regulation of pre-certification communications in general, the court stated that the interests at stake should be carefully weighed and a clear record should be developed before engaging in such supervision. *Id.*

A court's finding that no regulation is appropriate applies to both plaintiffs and defendants. In pre-certification communications, the potential plaintiffs are not "represented parties" for the purposes of California State Bar Rules of Professional Conduct, rule 2-100. *See Koo v. Rubio's Restaurant Corp.*, 109 Cal.App.4th 719 (2003); *Parks*, 235 F.Supp.2d at 1083. This means that both sides should have equal access and freedom to communicate with potential class members in the pre-certification stage because "both sides should be permitted to investigate the case fully." *Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867, 871; *Parks*, 235 F.Supp.2d at 1083. Thus, while any limits on pre-certification communication will apply to both sides, the freedom to communicate without court intervention will also apply to defendants and plaintiffs alike.

Additionally, a court can issue a protective order under Fed. R. Civ. P. 26(c), upon

motion by a party and "for good cause shown." Protective orders may be issued where "justice requires to protect a party from annoyance, embarrassment, oppression, undue burden or expense." A protective order may disallow discovery, set terms and conditions for discovery, or limit the scope of discovery. *Id.*

### I. Misleading Statements and Attorney-Client privilege

Ameriprise asks this Court, in part, to order Plaintiff's counsel to provide curative notice to prevent or cure confusion of P1 Employee Advisors. Plaintiff's counsel acknowledge in their "Newsletter" that P1 Employee Advisors are not putative class members, but may be witnesses. The "Newsletter" can be read as promising that any communication on the part of a P1 Employee to Plaintiff's counsel will be confidential, *i.e.* subject to the attorney-client privilege.

Under California law, the attorney-client privilege attaches to confidential communications between a client and his attorney during the course of the attorney-client relationship. The party resisting discovery on the grounds of privilege or the work-product doctrine bears the burden of proving that the asserted privilege or protection actually applies. *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). Evidentiary privileges are narrowly construed because they prevent the admission of relevant and otherwise admissible evidence. *McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229, 1236 (1st Dist. 2004).

P1 Employee Advisors are not parties to the instant litigation because they are not included in the putative class. Consequently, P1's who contact Plaintiff's counsel to provide facts or documents regarding this litigation are not doing so for the purpose of obtaining legal advice with respect to this litigation, and are not clients.

Plaintiff's counsel distributed the same "Newsletter" to both P1 Employee Advisors (not class members) and P2 putative class members. The "Newsletter" does not clearly distinguish between P1 and P2 Advisors. P1 Employee Advisors should not be left to guess whether portions of the letter's language are addressed to them or only to putative class members. Plaintiff's counsel should provide curative notice informing the P1 Employee Advisors who were sent the "Newsletter" that their conversations cannot

*automatically* be kept confidential.  Plaintiff's counsel should also tell any P1 Advisors who contact them that their conversations cannot *automatically* be kept confidential.

**II. Plaintiff's Counsel Obtaining Ameriprise's Financial Documents and Confidentiality**

Ameriprise is concerned that Plaintiff's counsel, through their conduct, could place at risk confidential client information protected by federal and state law; the careers of P1 Employee Advisors and P2 Independent Advisors; and Ameriprise Ameriprise Financial itself.  In the "Newsletter" it distributed, Plaintiff's counsel sought information from putative class members (P2 Independent Advisors) and non-class members (P1 Employee Advisors).  The request for "important information" does not make any exclusions for Ameriprise Financial's confidential and proprietary business documents, or for confidential client information.

Ameriprise Financial's privacy policy prohibits disclosure of client information, except in limited circumstances, none of which are applicable here.  Ameriprise and its advisors are subject to numerous state and federal laws that prohibit disclosure of client information to anyone outside of the company.  *See*, e.g., California Financial Information Privacy Act, Financial Code § 4050 et. seq.(prohibition against financial institutions disclosing or sharing certain client information without a signed consent; and providing penalties); Graham-Leach-Biley Act, 15 U.S.C. § 6801 et seq. (Act is violated if there is a violation of Company's privacy policy).  If Plaintiff's counsel were permitted to solicit and collect information or documents containing client confidential information outside formal discovery, then it would be a violation of the terms of the parties' confidentiality agreement and Ameriprise would be unable to conduct privilege and confidentiality review of its own confidential information and documents.  It would also compromise Ameriprise's ability to perform its duties under the law to protect its clients.

The Court holds that Plaintiff's counsel shall not seek to obtain, or obtain, Ameriprise Financial documents from any P1 Employee Advisors.  Plaintiff's counsel must also produce all originals and copies of documents they have received to date (or receive hereafter) from any P1 Employee Advisors.  Ameriprise shall be given the opportunity to

review said documents for attorney-client privilege.  The parties shall jointly draft the curative notice and submit it to the Court for approval.

**III. Disclosure of Identities of Ameriprise Financial Advisors Who Have Contacted Plaintiff's Counsel After Receiving the "Newsletter"**

Ameriprise also requests this Court to order Plaintiff's counsel to produce a list of all individuals to whom Plaintiff's counsel has distributed their "Newsletter," and a list of all individuals who have contacted Plaintiff's counsel in response to the "Newsletter." Plaintiff's counsel claims the names of such individuals are privileged pursuant to the attorney work-product doctrine.  Work product protection is afforded to materials that "reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses, and inferences drawn from interviews." *Hickman v. Taylor*, 329 U.S. 495 (1942).  The party asserting the doctrine bears the burden of establishing that the doctrine applies.  3-24 *Practice Guide: Federal Pretrial Civil Procedure in California,* § 24.100 (Matthew Bender).

In *In Re Ashworth*, 213 F.R.D. 385, 386 (S.D. Cal. 2002), plaintiffs identified approximately 75 current or former employees of defendant Ashworth that were likely to have discoverable information that plaintiffs may use to support their claims.  *Id.* at 385. Defendants wanted more information about the named employees, specifically the names of current or former employees that plaintiff had interviewed.  Plaintiffs' counsel refused, asserting that the attorney work product privilege shielded the information from disclosure. *Id.*  They argued that revealing the names of employees that have been interviewed by plaintiffs' counsel would "necessarily reveal counsel's opinions regarding the relative importance of these witnesses . . . and . . . would link any future factual statements by the witnesses with plaintiffs' counsel's legal theories and conclusions as outlined in the complaint."  *Id.* at 388.  The court agreed.  *Id.*  Information about Plaintiff's Counsel's legal theories, strategies or conclusions could be inferred through the identities of the witnesses, and their corresponding testimony.

Unlike the defendants in *Ashworth* or *In re MTI Technology Corp. Securities Litig. II,*

2002 U.S. Dist. LEXIS 13015, upon which *Ashworth* relied, Ameriprise is not asking for the names of its employees who have been interviewed by Plaintiffs' counsel. Ameriprise is asking for the names of its P1 and P2 Advisors that have contacted Plaintiff's counsel. However, this is not an important difference. In *Ashworth* and *MTI* the courts held the work product doctrine shielded the witnesses' names from opposing counsel because if "the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." *MTI*, at 8. In the case at bar, there is no information about how many, if any, of the P1 or P2 Advisors who may have contacted Plaintiff's counsel were subsequently interviewed by counsel. However, if the names of such individuals were disclosed to Ameriprise (assuming they exist), then it could easily learn which of its employees had been interviewed by Plaintiff's counsel simply by conducting its own interviews of those employees. Consequently, the parties would arrive at the same situation that concerned the courts in *Ashworth* and *MTI*. Opposing counsel could gain insight into the "mental impressions and trial strategy" of Plaintiff's counsel through its knowledge of which employees had been interviewed, and what information they possessed.

Public policy also strongly weighs against disclosure. The court in *Ashworth* noted that where a witness (employee) may be identified as an informant rather than an uninterested witness, there may be significant consequences for the employee-witness. *In re Ashworth,* 213 F.R.D. at 389. The court was referring to the threat of retaliation faced by employees who voluntarily cooperated with opposing counsel. Here, forcing Plaintiff's counsel to reveal the identities of P1 and P2 Advisors who contacted Plaintiffs' counsel after receiving the "Newsletter" exposes those individuals to possible retaliation.

The names of Ameriprise P1 and P2 Financial Advisors who contacted Plaintiff's counsel after receiving the "Newsletter" are subject to the attorney work-product doctrine. However, the work product doctrine provides only qualified protection. A party may obtain discovery of protected work product upon a showing that the party seeking discovery "has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain substantial equivalent of the materials by other

means." Fed. R. Civ. P. 26(b)(3). The party asserting the doctrine bears the burden of establishing that the doctrine applies. If this burden is met, the burden shifts to the party seeking discovery to show a "substantial need" and "undue burden." 3-24 *Practice Guide: Federal Pretrial Civil Procedure in California,* § 24.100 (Matthew Bender).

There are two reasons why Ameriprise cannot show a substantial need for the identities of its P1 or P2 Advisors who contacted Plaintiff's counsel in response to receipt of the "Newsletter." First, recipients of the "Newsletter" are Ameriprise Financial Advisors, so Ameriprise is in the best position to know, or find out itself, what information the P1 and P2 Advisors possess that could be relevant to this litigation. It need only interview its own Financial Advisors. The court in *Ashworth* found that since the witnesses whose identities were being sought were current or former employees of the defendant-employer seeking disclosure, that it was in the best position to know what its own employees could testify about. 213 F.R.D. at 390. Therefore, the defendant could not show a "substantial need" to obtain that information through Plaintiff's counsel. The same is true in this case. Ameriprise is in the best position to know what information P1 and P2 Advisors possess and so cannot meet its burden that it has a substantial need for the information.

In *In re Harmonic*, upon which Ameriprise relies, the court found the names of confidential witnesses were not protected by the work product doctrine. 245 F.R.D. at 425. The confidential witnesses were former employees of the various defendants. *Id.* at 426. The court held that the witnesses' names were not protected by the attorney work product privilege. *Id.* at 429. There are several important differences between *Harmonic* and the case at bar.

First, the witnesses whose identities were at issue in *Harmonic* were *former* employees. Here, Ameriprise seeks the identities of *current* Ameriprise P1 and P2 Advisors who have contacted Plaintiff's counsel. Consequently, the court in *Harmonic* was not faced with the same policy concern that this Court faces, and faced the court in *Ashworth*. Any threat of retaliation by the defendant-employer is considerably less when the witness is a *former* employee.

Second, the court in *Harmonic* found that disclosure of the witnesses' identities was inevitable and that earlier disclosure of that information did not compromise Plaintiffs' strategic or tactical position in the litigation. *Id.* at 428. In the case at bar, disclosure may compromise Plaintiff's position. The instant litigation may evolve into a class action suit, pending the outcome of motions for class certification and summary judgment not yet filed, or due to be filed. Further, there has only been limited discovery in this case. The docket reveals that, per the last case management conference, discovery has been limited to the class certification and franchise status issues. Discovery into the merits of Plaintiff's claims does not appear to have begun, and will likely not begin, if at all, until the class certification and summary judgment motions are decided. Consequently, disclosure of the identities of those Advisors is far from inevitable. Also, given the very early stage of this litigation, this Court cannot say that forcing Plaintiff to disclose those identities would not have significant consequences for Plaintiff's case as discovery into the merits of her claim progresses. Forcing Plaintiff to disclose the identities of those Advisors at this time could have significant adverse effects for both those Advisors and for Plaintiff's litigation against Ameriprise.

Lastly, the party seeking to compel disclosure of protected work product must show that it is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). The party asserting the doctrine bears the burden of establishing that the doctrine applies. It is difficult to assess the burden on Ameriprise if disclosure of the identities is not ordered because the total number of recipients of the "Newsletter" is not known. Whether it is a few dozen or a few hundred affects the analysis of the burden on Ameriprise to obtain the equivalent materials by other means. If it is seeking the identities of its Advisors who have contacted Plaintiff's counsel after receiving the "Newsletter" in order to learn what information those Advisors possess that might be relevant to this litigation, then being forced to interview its own Advisors without the benefit of that information, may or may not be a burden depending on the total number of recipients Ameriprise would have to interview.

**IV. Disclosure of Identities of P1 and P2 Advisors who received Plaintiff Counsels' "Newsletter"**

The names of P1 and P2 Advisors who received the "Newsletter" are not protected by the attorney work-product doctrine. Disclosing the names of the recipients of the "Newsletter" does not "necessarily reveal counsel's opinions regarding the importance of these witnesses," nor does it provide Ameriprise with insight into Plaintiff's counsel's legal theories or conclusions. Mere receipt of the Newsletter does not automatically make the recipient a witness for Plaintiff. Knowing the names of recipients doesn't give Ameriprise any new insight into Plaintiff's case, namely that Plaintiff's counsel is interested in talking with P1 and P2 Ameriprise Financial Advisors. Plaintiff's counsel already disclosed this information to Ameriprise Financial by virtue of mailing the "Newsletter" to P1 and P2 Financial Advisors.

**Conclusion and Order**

For the foregoing reasons, the Court agrees with Defendant and orders that Plaintiff's counsel:

(1) provide written curative notice to any P1 Employee Advisors who received their "Newsletter," informing them that their conversations with Plaintiff's counsel are not confidential, and that said employees should not provide company documents to Plaintiff or her counsel;

(2) expressly tell any P1 Employee Advisor who contacts them that their conversations with Plaintiff's counsel are not confidential and that said employees should not provide company documents to Plaintiff or her counsel;

(3) not seek to obtain or obtain Ameriprise Financial documents from any P1 Employee Advisors;

(4) produce a list of all individuals to whom they have distributed their "Newsletter" by any means;

(5) produce all originals and copies of documents they have received to date (or receive hereafter) from any P1 Employee Advisors, and give Ameriprise the opportunity to review said documents for attorney-client privilege.

1    The Court further orders that all documents obtained by Plaintiff's counsel from
2 Ameriprise Financial employees shall be designated as confidential pursuant to the
3 protective order.
4    Defendant's request that the Court order Plaintiff's counsel to produce a list of
5 names disclosing all individuals who have contacted them in response to their "Newsletter"
6 is DENIED.
7    IT IS SO ORDERED.
8 DATED: April 4, 2008

_____
James Larson
Chief Magistrate Judge

**United States District Court**
For the Northern District of California